**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LIBERTARIAN NAT'L COMMITTEE, INC.,

    **Plaintiff,**

    **v.**

LIBERTARIAN PARTY OF NEW MEXICO,
CHRIS LUCHINI, LAURA BURROWS, PAUL
MCKENNEY, FREDERICK SNOY, and JAMES
WERNICKE,

    **Defendants.**

**CIVIL ACTION NO. 1:26-cv-1562**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND
OTHER LANHAM ACT VIOLATIONS UNDER 15 U.S.C. §§ 1114, 1125**

This is an action under the laws of the United States, Title 15 of the United States Code, for trademark infringement, false designation of origin, false advertising, unfair competition, passing off, and unjust enrichment under 15 U.S.C. §§ 1114, and 1125(a)(1)(A) and (B), in which plaintiff Libertarian National Committee, Inc. ("LNC" or "Plaintiff"), makes the following allegations against the Libertarian Party of New Mexico, Chris Luchini, Laura Burrows, Paul McKenney, Frederick Snoy, and James Wernicke (collectively "Defendants").

**PARTIES**

1. Plaintiff LNC is a District of Columbia Corporation, having its primary office at 1321 Upland Drive, PMB 7311, Houston, TX, 77043-9965.

2. Defendant Libertarian Party of New Mexico ("LPNM") is a New Mexico domestic nonprofit corporation with its principal place of business in Albuquerque, New Mexico. Upon information and belief LPNM is located at 8100 Wyoming Blvd. NM, Albuquerque, NM 87113.

1

3.    Defendant Chris Luchini ("Luchini") is an individual residing within New Mexico. Upon information and belief, Luchini resides at 121 La Senda Rd, White Rock, NM 87547. Mr. Luchini is the Chairman and a Director of LPNM.

4.    Defendant Laura Burrows ("Burrows") is an individual residing within New Mexico. Upon information and belief, Burrows resides at 121 La Senda Rd, White Rock, NM 87547. Ms. Burrows is the Director of LPNM.

5.    Defendant Paul McKenney ("McKenney") is an individual residing within New Mexico. Upon information and belief, McKenney resides at 12904 Mountain View Ave NE, Albuquerque, NM 88203. Mr. McKenney is the Co-Treasurer of LPNM.

6.    Defendant Frederick Snoy ("Snoy") is an individual residing within New Mexico. Upon information and belief, Snoy resides at 729 Adobe Rd NW, Albuquerque, NM 87107. Mr. Snoy is a Director of LPNM.

7.    Defendant James Wernicke ("Wernicke") is an individual residing within New Mexico.  Upon information and belief, Wernicke resides at 3034 Nickel Street, Los Alamos, NM 87544. Mr. Wernicke is the Co-Treasurer of LPNM.

## JURISDICTION AND VENUE

8.    This action arises under the commerce and trade laws of the United States, Title 15 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

9.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) & (2).

## THE TRADEMARK

10.    Plaintiff has registered a number of trademarks with the USPTO that are associated and identified with its national and local political activities and affiliations.

2

11.     Plaintiff's trademark at issue in this matter is the federally registered trademark LIBERTARIAN PARTY® (the "Trademark"). *See* USPTO Reg. No. 2,423,459, attached hereto as **Exhibit 1**; *see also* Trademark Status and Document Retrieval results, attached hereto as **Exhibit 2**. This mark has been in continuous use in commerce nationwide by the LNC and its predecessors in interest in connection with services including promoting the interests of a political party and publications on political issues at least since January of 1972. Libertarian Party Press Release, January 31, 1972, attached hereto as **Exhibit 3**; Libertarian Party Newsletter, January 1972, attached hereto as **Exhibit 4**.

12.     Plaintiff actively uses the Trademark in commerce at the present time. Screenshot of front page of Plaintiff LNC's website, attached hereto as **Exhibit 5**.

13.     Plaintiff licenses the use of its trademarks to its officially recognized state-level affiliates and their officially recognized sub-affiliates pursuant to Plaintiff's bylaws. Libertarian Party Bylaws, Convention Special Rules, and Judicial Committee Rules of Appellate Procedure, attached hereto as **Exhibit 6**.

## FACTUAL BACKGROUND

14.     Plaintiff is the national committee of the Libertarian Party as defined by 52 U.S.C. § 30101(14) and manages the business of the Libertarian Party ("Party") throughout the United States at the national level, including by functioning as a libertarian political entity separate and distinct from all other political parties or movements; electing Libertarians to public office to move public policy in a libertarian direction; chartering affiliate parties throughout the United States and promoting their growth and activities; nominating candidates for President and Vice-President of the United States, and supporting Party and affiliate party candidates for political office; and entering into public information activities.

15.     The LNC, through its bylaws, charters state-level affiliates throughout the United States. Ex. 6 at Libertarian Party Bylaws, Art. 5, Sec. 2. Properly chartered affiliates are licensed to use the LNC's federally registered trademarks. *Id*. at Art. 5, Sec. 1.

16.     On or about August 25, 2022, LPNM notified the LNC that it was severing its affiliation with the LNC stating "LPNM and the LNC are no longer, in any sense, part of the same political party.  All connections between us are now totally and completely severed." LPNM News Release and Letter, August 26, 2022, attached hereto as **Exhibit 7**. This severing of affiliation terminated any rights the LPNM had to use the Trademark.

17.     On or about September 11, 2022, the LNC severed its ties with the LPNM though its own formal disaffiliation process. Minutes from LNC Meeting, Sep. 11, 2022, attached hereto as **Exhibit 8**. Any use of the trademark LIBERTARIAN PARTY® after that date was unauthorized.

18.     On or about November 5, 2022, the LNC chartered a different organization as its official New Mexico affiliate. Minutes from LNC Meeting, November 5-6, 2022, attached hereto as **Exhibit 9**; Petition for Affiliation, attached hereto as **Exhibit 10**. On that date, the new organization was entitled to use the Trademark but could not do so while operating as a political party due to the failure of the LPNM to relinquish the Trademark and the restriction of New Mexico NM Stat § 1-7-6 (2025) against political parties using confusingly similar names.[1]

19.     As a result of LPNM's unauthorized use and in order to obtain ballot access New Mexico, the LNC's New Mexico affiliate was forced to register as the "Free New Mexico Party." Letter from State of New Mexico Secretary of State, July 3, 2024, attached hereto as **Exhibit 11**.

---

[1] It had originally been affiliated as the Free Libertarian Party of New Mexico but could not petition for ballot access under that name under New Mexico law and later changed its name to the Free New Mexico Party until it could regain rightful use of the LNC's Trademark.

20.     The LPNM not only continued to use the Trademark, it also affiliated with a competing national political organization, the Liberal Party USA, and is listed on the Liberal Party's website as an official affiliate though using the name Liberal Party of New Mexico with a link leading to a website prominently featuring the Trademark. Screenshot of Liberal Party USA, attached hereto as **Exhibit 12**.[2]

21.     LPNM, consistent with its intention to affiliate with the Liberal Party USA, changed its bylaws to affiliate with the Liberal Party USA. 2024 Constitution and Bylaws of LPNM, attached hereto as **Exhibit 13**, at 14. This affiliation was originally with the Association of State Liberty Parties which changed its name to the Liberal Party USA. Independent Political Report Article, February 12, 2024, attached hereto as **Exhibit 14**.

22.     Additionally, the LPNM ran the Liberal Party USA presidential ticket in the 2024 November election in competition with the official Libertarian Party ticket. Independent Political Report Article, September 4, 2024, attached hereto as **Exhibit 15**.

23.     Under New Mexico statute 1-7-6(A)-(B) NMSA, a political party's New Mexico secretary-of-state-certified party name and emblem shall be used to designate the ticket of that party on all ballots in New Mexico. The LNC's New Mexico affiliate uses Free New Mexico as its certified party name and nominated its 2024 presidential and vice-presidential candidates under that party name. Certificate of Nomination dated June 24, 2024, attached hereto as **Exhibit 16**. Nevertheless, the New Mexico Secretary of State was apparently confused and listed the Free New Mexico Party's candidates under the Libertarian Party name, creating confusion among New Mexico voters as to the party affiliation of the Free New Mexico Party's candidates. New Mexico 2024 Election Ballot, attached hereto as **Exhibit 17**.

---

[2] https://www.liberalpartyusa.org/. (Last accessed April 27, 2026).

24.    LPNM also holds at least two social media accounts using the Trademark without authorization. Screenshot of X account, April 27, 2026, attached hereto as **Exhibit 18**; Screenshot of Facebook account, April 27, 2026, attached hereto as **Exhibit 19**.

25.    Multiple cease and desist letters have been sent to the Defendants demanding that LPNM and its officers immediately stop using the Trademark. Despite these demands, the Defendants continue to use the Trademark on their website, social media accounts, and with the Secretary of State. Cease and Desist Letter, July 9, 2023, attached hereto as **Exhibit 20**; Cease and Desist Letter, October 4, 2022, attached as **Exhibit 21**; Cease and Desist Letter, September 26, 2025, attached hereto as **Exhibit 22**; Cease and Desist Letter, May 8, 2026, attached hereto as **Exhibit 23**.

26.    Defendants' infringement has caused harm and damage to the LNC and its official affiliate, including monetary harm, political harm, and reputational harm; dilution and disparagement of the LNC's federally registered Trademark and the goodwill associated therewith. Defendants have used the LNC's federally registered mark to, among other things, promote the interests of the Liberal Party USA political party, including soliciting funds, attracting, advertising, and running candidates for political office, engaging in political activism in person and online including through the publication of communications concerning political issues, and gathering petition signatures from New Mexico voters. By these uses, Defendants have created a likelihood of confusion within the public as to the source of their activities and as to the affiliation of their organization with the LNC without the LNC's consent, and have deprived the LNC's officially recognized affiliate of use of the Trademark to which it is entitled.  Defendants or their predecessor officers, by affiliating with a different and directly competitive national political organization, the Liberal Party USA, have further confused the public and disparaged the Plaintiff's mark.

6

## COUNT I

## <u>FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114</u>

27.     Plaintiff herein restates and incorporates by reference all of the above paragraphs.

28.     Plaintiff LNC is the exclusive owner and registrant of the Trademark LIBERTARIAN PARTY® and to all common law rights thereto and associated therewith.

29.     Plaintiff's registration of the Trademark at the USPTO is valid and active, and in full force and effect.

30.     Plaintiff has used, and continues to use, the Trademark in commerce.

31.     Defendants have, without the consent of the Plaintiff, used the Trademark, reproductions of the Trademark, counterfeits of the Trademark, copies of the Trademark, and/or colorable imitations of the Trademark in commerce in a manner that is confusing or confusingly similar and has deprived the LNC and its affiliate of its rightful and lawful use ("Defendants' Infringing Uses").

32.     Defendants' Infringing Uses include repeated and continuous distribution, advertising, and publication of information and materials containing references to "Libertarian Party."

33.     Defendants' Infringing Uses of Plaintiff's Trademark occurred, and continue to occur, in related commercial fields for related commercial services (*e.g.*, political party communications, political party activities, political press activity, political candidate screenings, official filings and registrations and endorsements).

34.     Defendants' Infringing Uses of Plaintiff's Trademark include Defendants receiving money from individuals–by misleading and deceiving those individuals as to Defendants' relationship, affiliation or sponsorship with or by Plaintiff, and using Plaintiff's Trademark.

35.    Defendants' Infringing Uses of Plaintiff's Trademark—especially when considered in light of their knowing and defiant continued uses—have been intentional, and upon information and belief are done to create a false impression of affiliation, authorization or sponsorship, and to deprive the Plaintiff's rightful affiliate, and by extension the Plaintiff, from its full and lawful use to which it is entitled.

36.    Defendants' Infringing Uses of Plaintiff's Trademark–especially when considered in light of their knowing and defiant continued uses–have been intentional, to harm and appropriate Plaintiff's mark, to harm Plaintiff's goodwill, to dilute Plaintiff's mark, and to deprive the Plaintiff's rightful affiliate, and by extension the Plaintiff, from its full and lawful use to which it is entitled.

37.    Defendants' Infringing Uses have therefore caused confusion or mistake and are likely to continue to cause confusion or mistake as to Defendants' association, affiliation or relationship with Plaintiff. Such confusion or mistake is probable, given the relatedness of Defendants' Infringing Uses.

38.    Defendants' Infringing Uses and willful conduct in relation thereto constitute trademark infringement and trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1114.

39.    Plaintiff has been and will continue to be harmed by Defendants' Infringing Uses. Defendants' conduct has irreparably harmed Plaintiff and will continue to do so unless enjoined by this Court.

40.    As a result of Defendants' conduct, Plaintiff has been harmed and is entitled to damages, including but not limited to, actual damages, statutory damages, treble damages, corrective advertising damages, and a temporary and permanent injunction.

41.    The harm caused to Plaintiff's business, goodwill, reputation, trademark, and finances are a direct and proximate result of Defendants' unauthorized intentional, deliberate, and willful use of Plaintiff's Trademark.

42.    The intentional, deliberate, and willful actions of Defendants render this an exceptional case, entitling Plaintiff to enhanced damages and an award of attorneys' fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

43.    The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT II
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)(1)(A)

44.    Plaintiff herein restates and incorporates by reference all of the above paragraphs.

45.    Defendants have, without the consent of the Plaintiff, used the Trademark including, but not limited to, words, terms, and names.

46.    Defendants have, without the consent of the Plaintiff, used the Trademark in false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, regarding the Trademark.

47.    Defendants' unlawful usage of Plaintiff's Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants or their activities with the Plaintiff and has rendered the Plaintiff's rightful affiliate unable to use the Trademark.

48.    Defendants' unlawful usage of Plaintiff's Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their commercial

activities by the Plaintiff and has rendered the Plaintiff's rightful affiliate unable to use the Trademark.

49.     Defendants' unlawful usage of Plaintiff's Trademark has caused confusion, mistake and deception as to the origin, sponsorship, or approval of their commercial activities by the Plaintiff and has rendered Plaintiff's rightful affiliate unable to use the Trademark.

50.     Defendants' Infringing Uses of Plaintiff's Trademark include Defendants receiving money from individuals by misleading and deceiving those individuals as to Defendants' relationship, affiliation or sponsorship with or by Plaintiff, by using Plaintiff's Trademark.

51.     Defendants' unlawful usage of Plaintiff's Trademark is willful and deliberate.

52.     Defendants have acted purposefully to create a false or misleading association to trade off the extensive goodwill that Plaintiff's Trademark has established.

53.     Defendants' unlawful usage of Plaintiff's Trademark and willful conduct in relation thereto constitute false designation of origin, false descriptions, and dilution of the Trademark in violation of 15 U.S.C. § 1125(a)(1)(A).

54.     Plaintiff has been and will continue to be harmed by Defendants' unlawful usage of Plaintiff's Trademark. Defendants' conduct has irreparably harmed Plaintiff and will continue to do so unless enjoined by this Court.

55.     As a result of Defendants' unlawful usage of Plaintiff's Trademark, Plaintiff has been harmed and is entitled to damages, including but not limited to, actual damages, statutory damages, treble damages, and corrective advertising damages.

56.     The harm caused to Plaintiff's business, goodwill, reputation, and finances are a direct and proximate result of Defendants' intentional, deliberate, and willful misuse of Plaintiff's Trademark in an unlawful manner.

57.    The intentional, deliberate, and willful actions of Defendants render this an exceptional case, entitling Plaintiff to enhanced damages and an award of attorney's fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

58.    The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT III
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)

59.    Plaintiff herein restates and incorporates by reference all of the above paragraphs.

60.    Defendants have, without the consent of the Plaintiff, used the Trademark including, but not limited to, words, terms, names, and combinations thereof.

61.    Defendants have, without the consent of the Plaintiff, used the Trademark in false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, regarding the Trademark.

62.    Defendants have, without the consent of the Plaintiff, used the Trademark in commercial advertising and promotion.

63.    Defendants' unlawful usage of Plaintiff's Trademark in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of their commercial activities.

64.    Defendants' unlawful usage of Plaintiff's Trademark has caused confusion, mistake and deception as to the origin, sponsorship, or approval of their commercial activities by the Plaintiff.

11

65.     Defendants' Infringing Uses of Plaintiff's Trademark include Defendants receiving money from individuals by misleading and deceiving those individuals as to Defendants' relationship, affiliation or sponsorship with or by Plaintiff, using Plaintiff's Trademark.

66.     Defendants' unlawful usage of Plaintiff's Trademark is willful and deliberate.

67.     Defendants have acted purposefully to falsely advertise and promote their activities in order to trade off the extensive goodwill that Plaintiff's Trademark has established.

68.     Defendants' unlawful usage of Plaintiff's Trademark and willful conduct in relation thereto constitute false advertising of the Trademark in violation of 15 U.S.C. § 1125(a)(1)(B).

69.     Plaintiff has been and will continue to be harmed by Defendants' unlawful usage of Plaintiff's Trademark. Defendants' conduct has irreparably harmed Plaintiff and will continue to do so unless enjoined by this Court.

70.     As a result of Defendants' unlawful usage of Plaintiff's Trademark, Plaintiff has been harmed and is entitled to damages, including but not limited to, actual damages, statutory damages, treble damages, and corrective advertising damages.

71.     The harm caused to Plaintiff's business, goodwill, reputation, and finances are a direct and proximate result of Defendants' intentional, deliberate, and willful misuse of Plaintiff's Trademark in an unlawful manner.

72.     The intentional, deliberate, and willful actions of Defendants render this an exceptional case, entitling Plaintiff to enhanced damages and an award of attorneys' fees and costs associated with the action pursuant to 15 U.S.C. § 1117(a).

73.     The damage caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT IV

### INJUNCTIVE RELIEF UNDER 15 U.S.C. § 1116(a)

74.     Plaintiff herein restates and incorporates by reference all of the above paragraphs.

75.     Plaintiff has shown, herein, that Defendants have unlawfully used Plaintiff's Trademark in violation of 15 U.S.C. §§ 1114, 1125(a)(1)(A) and 1125(a)(1)(B).

76.     Plaintiff has shown, herein, that Defendants' infringement of Plaintiff's Trademark is willful, deliberate and ongoing.

77.     Plaintiff has shown, herein, that Plaintiff has been, and will continue to be, harmed by Defendants' infringement of Plaintiff's Trademark.

78.      Plaintiff has shown, herein, that Plaintiff has been irreparably harmed by Defendants' infringement of Plaintiff's Trademark, and that Defendants will continue to do so unless enjoined by this Court.

79.     The damages caused to Plaintiff by Defendants cannot be fully measured or compensated for in economic terms. Such irreparable harm will continue unless Defendants are enjoined from such conduct.

## COUNT V

### CONVERSION

80.     Plaintiff herein restates and incorporates by reference all of the above paragraphs.

81.     In 2016, David Marion Clinard, Jr. left a bequest to the Libertarian Party of New Mexico. Escrow Agreement, July 2018, attached hereto as **Exhibit 24.** The bequest is held in escrow and a portion thereof is disbursed each year to the Libertarian Party of New Mexico. Initially this annual disbursement was limited to $5,500, but the limit increased in later years. Upon information and belief, a substantial balance remains in escrow.

82.    The Escrow Agreement is based on the representation that LPNM is "officially recognized by the Federal Election Committee as a state committee of the Libertarian National Party." Ex. 22 at 1.

83.    Upon LPNM decision to unaffiliate with the LNC the bequest should have been transferred to the LNC for distribution to its recognized local affiliate, but Defendants failed to do so.

84.    Defendants have received annual distributions from the escrow funds in at least 2023, 2024, and 2025. Upon information and belief, the Defendants have spent, allocated, and otherwise unlawfully controlled these funds meant for the LNC to designate for distribution to its recognized affiliate.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a.    A preliminary injunction enjoining Defendants and others acting in concert with Defendants from infringing on Plaintiff's Trademark and from using, advertising, or publicizing any information that includes or refers to Plaintiff's Trademark or any colorable imitation thereof;

b.    A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1114;

c.    A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1125(a)(1)(A);

d.    A judgment in favor of Plaintiff that Defendants violated 15 U.S.C. § 1125(a)(1)(B);

e.       A judgment in favor of Plaintiff that Defendants converted funds rightfully belonging to Plaintiff's recognized affiliate.

f.       A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1114;

g.       A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1125(a)(1)(A);

h.       A judgment in favor of Plaintiff that Defendants intentionally violated 15 U.S.C. § 1125(a)(1)(B);

i.       A judgement in favor of Plaintiff that Defendants have violated the Federal Trademark rights of Plaintiff;

j.       A judgment in favor of Plaintiff that Defendants have violated Plaintiff's Lanham Act rights;

k.       A judgment and order requiring Defendants to pay Plaintiff monetary damages – in an amount to be determined at trial – in addition to awarding Plaintiff's' attorney's fees, costs, expenses, enhanced and/or exemplary damages, and pre-judgment and post-judgment interest;

l.       A permanent injunction enjoining Defendants and others acting in concert with Defendants from infringing on Plaintiff's Trademark and from using, advertising or publicizing any information that includes or refers to Plaintiff's Trademark or any colorable imitation thereof; and

m.       Any and all other relief to which Plaintiff may be entitled.

Dated: May 15, 2026.

15

Respectfully Submitted,


BARDACKE ALLISON MILLER LLP

By: */s/ Billy Trabaudo*
Benjamin Allison
Justin Miller
Billy Trabaudo
141 E. Palace Avenue
Santa Fe, NM  87501
505-995-8000
ben@bardackeallison.com
justin@bardackeallison.com
billy@bardackeallison.com

AND

FRESH IP PLC

By: */s/Cliff Hyra*
Clifford D. Hyra
VA Bar No. 75,021
11710 Plaza America Drive
Suite 2000
Reston, VA 20190
(866) 913-3499
cliff@freship.com

*Counsel for Plaintiff Libertarian Nat'l Committee*

16