EXHIBIT 24

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT ("**Agreement**") has been made as of July __, 2018, by David Marion Clinard, Jr., as Personal Representative of the ESTATE OF FRANK W. CLINARD, JR. ("**Decedent**"), of 2940 Arizona Ave,
Los Alamos, Los Alamos County, NM-87544 ("**Estate**"), LIBERTARIAN PARTY OF NEW MEXICO, a New Mexico nonprofit corporation, of 8100 Wyoming Boulevard NE, Suite M4, #341, Albuquerque, New Mexico 87113 ("**LPNM**"), and MERCANTILE BANK OF MICHIGAN, a Michigan banking corporation, of 310 Leonard Street, N.W., Grand Rapids, Michigan 49504 ("**Escrow Agent**"), based on the following facts.

A.      Frank W. Clinard, Jr. died on August 30, 2016, leaving a Last Will and Testament dated November 19, 2008 in which the LPNM was named as a residual beneficiary (the "**Will**"). The Estate is being administered in the Probate Court for the County of Los Alamos, State of New Mexico, Case No. 859. David Marion Clinard, Jr. has been duly appointed as Personal Representative of the Estate. Pursuant to the Decedent's Will, the Estate has determined that Decedent's bequest to the LPNM equals the sum of One Hundred Eleven Thousand Eight Hundred Sixty-Three and 52/100 Dollars ($111,863.52) ("**Bequest**"), which the Estate desires to distribute to the LPNM.

B.      The LPNM has been officially recognized by the Federal Election Committee ("**FEC**") as a state committee of the Libertarian National Party. As a state committee of a national political party, contributions by the Estate to the LPNM are currently limited under applicable state campaign finance law to the sum of not more than Five Thousand Five Hundred and 00/100 Dollars ($5,500.00) per calendar year, as adjusted for inflation by the FEC or such other appropriate agency in the future or as otherwise changed by law or court decision in the future ("**State Contribution Limit**").

C.      As the Bequest exceeds the State Contribution Limit, the Estate and LPNM have agreed that the Estate shall fulfill its obligation for distribution of the Bequest to the LPNM by distributing the sum of Five Thousand Five Hundred and 00/100 Dollars ($5,000.00) to the LPNM and depositing in escrow with Escrow Agent the balance of the Bequest, in the sum of One Hundred and Six Thousand Three Hundred and Sixty Three and 52/100 Dollars ($106,363.52) ("**Escrow Funds**") to be distributed pursuant to the terms and conditions contained herein. The Estate and LPNM acknowledge that the 2017 distributions by the Estate to the LP have been made.

D.      The Estate and LPNM desire to designate Escrow Agent as the escrowee of the Escrow Funds deposited under this Agreement.

ACCORDINGLY, THE ESTATE, LPNM, AND ESCROW AGENT AGREE:

1. **Escrow Agent.** The Estate and LPNM designate Escrow Agent and Escrow Agent agrees to act as escrowee for the purposes and upon the conditions set forth in this Agreement.

2. **Deposit of Escrow Funds.**    After the disbursement in 2018, as set forth in Paragraph C above, the Estate shall deliver the Escrow Funds to Escrow Agent.  The LPNM has delivered to the Personal Representative and LANB a duly executed final receipt and release, a copy of which is attached hereto as **Exhibit A.**  All interest accruing on the Escrow Funds shall be deemed part of the Escrow Funds.  Escrow Agent shall invest the Escrow Funds in the name of Escrow Agent, for the benefit of the LPNM, with all interest taxable to the LPNM, in bank accounts or certificates of deposit fully insured by the Federal Deposit Insurance Corporation. The LPNM agrees that the LPNM will be responsible for any standard fees associated with any such bank account(s) or certificate(s) of deposit into which the Escrow Funds shall be deposited.  The LPNM agrees to sign and deliver such W-9 forms or other statements as Escrow Agent may reasonably request.  Specifically, LPNM directs Escrow Agent to invest the Escrow Funds as set forth on **Exhibit B** attached hereto, which directions may be altered or amended from time to time, in writing, within the discretion of the LPNM.

3. **Distribution of Escrow Funds; Termination of Escrow.**  The Escrow Agent shall distribute the Escrow Funds in increments equal to the State Contribution Limit, which amount shall be determined by the LPNM, who shall certify said amount in writing to the Escrow Agent on or before July 25 of each calendar year, commencing in calendar year 2018.  <u>Such certification shall contain a statement that distribution of the amount LPNM directs to be distributed and all amounts previously distributed at LPNM's direction from the Escrow Funds does not violate any applicable Federal or State laws and regulations.  The parties agree that the Escrow Agent shall mail a</u> check payable to the LPNM in an amount equal to the then effective and certified State Contribution Limit on or before August 1 of each calendar year, commencing in calendar year 2018.  The checks referenced herein shall be mailed to

LIBERTARIAN PARTY OF NEW MEXICO
8100 Wyoming Boulevard NE
Suite M4, #341
Albuquerque, New Mexico 87113

unless otherwise agreed to by the Escrow Agent and LPNM in writing.  Alternatively, distributions required hereunder may be made by wire transfer by Escrow Agent to LPNM at LPNM's election. LPNM agrees to pay any and all costs associated with wire transfers made by Escrow Agent to LPNM.

The LPNM understands that under no circumstances may it request or require that the Escrow Agent pay to the LPNM in any calendar year an amount that would exceed the State Contribution Limit.  Escrow Agent understands that the LPNM may challenge the legal validity of the State Contribution Limit in federal court, and in the event that the LPNM is successful in that challenge, the LPNM may be able to certify to the Escrow Agent that the entire balance of the Escrow Funds can be paid to the LPNM.  This Agreement shall terminate automatically when the entirety of the Escrow Funds have been delivered to the <u>LPNM.  The provisions of this Agreement which release the Escrow Agent from liability and/or limit the liability of the Escrow Agent and/or indemnify the Escrow Agent from liability and other provisions which by their nature contemplate rights and obligations of the parties to be enjoyed or performed after the expiration or termination of this Agreement will survive until their purposes are fulfilled.</u>

4. **Liability of Escrow Agent.** Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. Upon making delivery of the Escrow Funds and performing its obligations and services under this Agreement, Escrow Agent shall be released from any further liability under this Agreement. Escrow Agent has no fiduciary or discretionary duties of any kind. Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Agreement, including without limitation any other agreement between any or all of the parties hereto or any other persons even though reference thereto may be made herein. Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that Escrow Agent's gross negligence or willful misconduct was the cause of loss to LPNM. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of Escrow Funds in accordance with the terms of this Agreement. Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. Escrow Agent shall have no responsibility to determine or inquire into or otherwise corroborate the happening or occurrence of any event or condition described in such certificate or document_or to determine whether the distribution of any amounts from the Escrow Funds complies with applicable Federal or State laws and regulations, including those related to campaign finance.

Except for Escrow Agent's gross negligence or willful misconduct, in no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages or penalties (including but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action. Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control, including without limitation acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters. LPNM agrees to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder. Escrow Agent is authorized, in its sole discretion, to comply with final orders issued or process entered by any court with respect to Escrow Funds, without determination by Escrow Agent of such court's jurisdiction in the matter.

5. **Dispute Resolution Procedure.** In the event of any disagreement or controversy under this Agreement or if Escrow Agent in good faith is in doubt as to what action it should take with respect to the Escrow Funds, Escrow Agent shall have the absolute right at its election to take any or all of the following actions:

(a) Hold the Escrow Funds until the Escrow Agent and LPNM agree upon the proper disposition of it;

(b) Hold the Escrow Funds until Escrow Agent receives a court order concerning the disposition of the Escrow Funds in form and substance satisfactory to Escrow Agent;

(c) File an interpleader action in an appropriate court naming the LPNM, the

Estate, and all other claimants and interested parties as parties, and deposit the Escrow Funds with the clerk of such court in full satisfaction of its responsibilities under this Agreement; or

(a) Exercise any other rights or remedies available to it at law or in equity. In any such event, Escrow Agent shall be reimbursed from the Escrow Funds for its reasonable attorneys' fees in taking such actions.

6.    **Indemnity; Exculpation.** LPNM shall indemnify, hold harmless, and, at Escrow Agent's option, defend Escrow Agent from and against any loss, liability, claim or expense, including, without limitation, reasonable attorney fees and court costs arising as a result of Escrow Agent's acceptance of the Escrow Fund or the performance of Escrow Agent's duties under this Agreement unless such loss, liability, claim or expense is finally adjudicated to have resulted from the bad faith or gross negligence of Escrow Agent. Such indemnity, hold harmless and defense obligations shall survive Escrow Agent's resignation or removal and shall survive the termination of this Agreement. In no event shall Escrow Agent be liable, directly or indirectly, for any (a) diminution in the value of the Escrow Fund; (B) damages or expenses arising out of Escrow Agent's performance of this Agreement, other than damages and expenses that result solely from the gross negligence or willful misconduct of Escrow Agent, as determined by a court of competent jurisdiction; or (c) special or consequential damages, even if Escrow Agent has been advised of the possibility of such damages. The obligations of LPNM under this Section 6 shall survive any termination of this Agreement and the resignation or removal of Escrow Agent.

7.    **Resignation.** Escrow Agent may resign for any reason, or without reason, in its sole discretion by giving thirty (30) days written notice to LPNM. Thereafter, and after payment of Escrow Agent's fees and expenses incurred to that point, or the deduction of such fees from the Escrow Fund, Escrow Agent shall deliver the Escrow Fund to a successor Escrow Agent, as appointed by written agreement of the LPNM. If no such written agreement is received by Escrow Agent within thirty (30) days after the notice of resignation, Escrow Agent is unconditionally and irrevocably authorized and empowered to pay over and distribute the Escrow Fund to such bank or trust company in the State of Michigan as Escrow Agent shall determine in its sole discretion and which has consented to act as escrow agent or if none is available or willing to serve as escrow agent, to file an interpleader action as described in Subsection 5(c) and deposit the Escrow Fund with the clerk of the court as described in that Subsection.

8.    **Escrow Fee.** The Escrow Agent agrees to act as Escrow Agent pursuant to this Agreement in return for a one-time escrow set-up fee of Seven Hundred and Fifty and 00/100 Dollars ($750), plus reimbursement of Escrow Agent's attorneys' fees to review this Agreement (estimated at no more than $1,000), which shall be paid by the LPNM upon signature of this Agreement by all parties. Escrow Agent may consult the attorneys of its choice for advice regarding carrying out its duties under this Agreement and may deduct the amount of reasonable attorneys' fees thereby incurred from the Escrow Funds. If any fees or other sums owed to Escrow Agent under this Agreement or any Indemnified Party in respect of any compensation or reimbursement hereunder are not paid promptly when due, Escrow Agent may deduct such sums from the Escrow Funds. Notwithstanding the foregoing, the parties hereto agree that the

Escrow Agent may immediately deduct the escrow fee detailed in this paragraph from the Escrow Funds.

9. **Representations and Warranties.** LPNM and the Estate, severally and not jointly, each respectively represent and warrant to Escrow Agent that (i) it has full power and authority to execute and deliver this Agreement and perform its obligations hereunder, and this Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms; and (ii) each of the persons executing this Agreement have been duly appointed to act as authorized representatives hereunder and have full power to amend, modify or waive any provision of this Agreement and to take any and all other actions as authorized representatives under this Agreement, provided that any change in designation of such authorized representatives shall be provided by written notice delivered to each party to this Agreement.

10. **Account Opening Information/Reporting/Payment of Interest.**

(a) To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, charity, trust or other legal entity, Escrow Agent requires documentation to verify its formation and existence as a legal entity. Escrow Agent may ask to see financial statements, licenses, identification, and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The parties acknowledge that a portion of the identifying information set forth herein is being requested by Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

(b) Upon execution of this Agreement, LPNM shall provide the Escrow Agent with a fully executed W-8 or W-9 IRS form.

(c) All interest or other income earned under the Escrow Agreement shall be allocated and/or paid pursuant to the terms of this Agreement and shall be reported by the LPNM to the Internal Revenue Service or any other taxing authority. Notwithstanding any other provision in this Agreement, Escrow Agent shall report and, as required, withhold any taxes as it determines to be required by any law or regulation in effect at the time of the distribution. In the event that any earnings remain undistributed at the end of any calendar year, Escrow Agent shall report to the Internal Revenue Service or such other authority such earnings as it deems appropriate or as required by any applicable law or regulation or, to the extent consistent therewith, as directed by LPNM. In addition, Escrow Agent shall withhold any taxes it deems appropriate and as required by applicable law, and shall remit such taxes to the appropriate authorities.

11. **Termination.** This Agreement shall terminate upon the distribution of all Escrow Funds pursuant to any applicable provision of this Agreement, and Escrow Agent shall thereafter have no further obligation or liability whatsoever with respect to this Agreement or Escrow

Funds.

12. **Brokerage Confirmation Waiver.** LPNM and the Estate acknowledge that to the extent regulations of the Comptroller of the Currency or other regulatory entity grant them the right to receive brokerage confirmations for security transactions as they occur, LPNM and the Estate specifically waive receipt of such confirmations to the extent permitted by law. Escrow Agent will furnish LPNM monthly cash transaction statements that include detail for all investment transactions made by Escrow Agent.

13. **Successors and Assigns.** This Agreement shall bind and benefit the Estate, LPNM and Escrow Agent, and their respective successors, heirs, personal representatives, and assigns.

14. **Directions, Notices and Amendments.** Any and all directions or instructions provided to the Escrow Agent by the LPNM with regard to investments, distributions or any other matters relating to the Escrow Funds, shall be made in writing, certified by legal counsel for the LPNM. All notices or other communications to be given under this Agreement shall be deemed to have been duly given, made, and received when delivered personally or mailed by certified mail, return receipt requested and first class postage prepaid, to the parties' addresses set forth above, or to such other addresses as may be designated by a similar written notice. No waiver or amendment of this Agreement or any provision of this Agreement shall be effective unless in writing signed by the parties to this Agreement.

15. <u>**Choice of Law and Forum.** This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Michigan, but without regard to its choice of law principles. Any and all actions concerning any dispute arising hereunder shall be filed and maintained only in a State or Federal court sitting in Kent County, Michigan and the parties hereby consent to the jurisdiction of any such court and consent to venue in any such court.</u>

16. **Counterparts.** This Agreement may be signed in two or more counterparts, which together shall comprise one and the same instrument. Faxed or scanned signatures on this Agreement shall be deemed to have the same legal effect as original signatures.

17. **Severability**. To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

18. **Entire Agreement; No Third Party Beneficiaries.** This Agreement constitutes the entire agreement between the parties relating to the holding, investment and disbursement of Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to Escrow Funds. Nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

19. **WAIVER OF TRIAL BY JURY.** EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION

(I) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR (II) IN ANY WAY IN CONNECTION WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY SUCH PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES TO THIS AGREEMENT, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. EACH OF THE PARTIES HERETO HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT EACH HAS REVIEWED OR HAD THE OPPORTUNITY TO REVIEW THIS WAIVER WITH ITS RESPECTIVE LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH SUCH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A CONSENT BY ALL PARTIES TO A TRIAL BY THE COURT.

The parties have signed this Agreement and intend it to be effective as of the date set forth above.

ESTATE OF FRANK W. CLINARD, JR.

By: LOS ALAMOS NATIONAL BANK, as agent for David Marion Clinard, Jr., Personal Representative of the Estate of Frank W. Clinard, Jr.

By:_____

Its:_____


LIBERTARIAN PARTY OF NEW MEXICO

By:_____

Its: _Treasurer_____

_Rebecca Lescombes_


MERCANTILE BANK OF MICHIGAN

By:_____

Its:_____

EXHIBIT D

**Receipt**

*[See Attached Final Receipt and Release]*

## EXHIBIT B

### Investments

- $_____ invested in 12-month certificate of deposit at <u>Mercantile Bank of Michigan.</u>

- $_____ invested in 24-month certificate of deposit at <u>Mercantile Bank of Michigan.</u>

Balance <u>of $</u>_____invested in Money Market Checking Account at <u>Mercantile Bank of Michigan.</u>

Upon maturity of the initial 24-month certificate of deposit at Mercantile Bank of Michigan detailed above and upon the maturity of each subsequent 24-month certificate of deposit, the investments of the Escrow Funds shall proceed as follows:

1.  An amount equal to the then effective State Contribution Limit shall remain in the Money Market Checking for disbursement in the next calendar year pursuant to the terms of this Agreement;

2.  An amount equal to the then effective State Contribution Limit shall be invested in a 12-month certificate of deposit at Mercantile Bank of Michigan; and

3.  Any amounts remaining thereafter shall be reinvested in a 24-month certificate of deposit at Mercantile Bank of Michigan.

PROBATE COURT
STATE OF NEW MEXICO
COUNTY OF LOS ALAMOS


IN THE MATTER OF THE ESTATE OF
FRANK W. CLINARD JR., Deceased

## FINAL RECEIPT AND RELEASE

KNOW ALL MEN BY THESE PRESENTS that the Libertarian Party of New Mexico (hereinafter "Libertarian Party") being a residual beneficiary under the Last Will and Testament of Frank W. Clinard dated November 19, 2008 (duly admitted to probate in Case No. 859, Probate Court, State of New Mexico, County of Los Alamos), hereby acknowledges that it received from Los Alamos National Bank ("LANB") as Agent for David Marion Clinard, Jr., Personal Representative of the Estate of Frank W. Clinard, Jr. identified above, an accounting, attached hereto as Schedule A, of all transactions pertaining to the Estate from the date of death of Frank W. Clinard through May 31, 2017 and it approves of said transactions and it further acknowledges that it shall receive the sum of One Hundred Eleven Thousand, Eight Hundred Sixty-Three Dollars and 52/100 ($111,863.52) in satisfaction of the distribution to which it is entitled pursuant to the terms of the Last Will and Testament.

Libertarian Party, its successors and assigns, does by these presents remise, release, quit-claim, indemnify and forever discharge LANB, Los Alamos, New Mexico, its successors, assigns, employees, agents, officers and directors and David Marion Clinard, Jr., his heirs, successors and assigns, of and from all accounts and reckonings on the monies described herein, and of and from all actions, suits, accounts, claims and demands whatsoever, for or by reason thereof, or of any other act, matter, cause or thing whatsoever, arising from or attributable to LANB's or David Marion Clinard, Jr.'s administration and management of said Estate.  The

undersigned further declares that he/she has the full authority of the governing body of Libertarian Party to execute this Receipt and Release.

Libertarian Party also hereby agrees, to the extent of the fair market value of the distributions made and receipted for pursuant to this agreement, to refund such distribution to the Agent for the Personal Representative (1) to the extent such distributions may ultimately be determined to have been in excess of the amounts properly distributable and (2) to the extent necessary to pay the amount of any tax, expenses, claim, damage, liability, loss, demand or charge of any kind or nature whatsoever which LANB or David Marion Clinard, Jr. may incur or which may be payable by said Agent or Personal Representative because of, in respect of, or in connection with its acts, omissions, transactions, duties, obligations or responsibilities as Trustee in connection with this distribution.

IN WITNESS WHEREOF, The Libertarian Party of New Mexico has caused this Receipt and Release to be executed this 28th day of June, 2017.

THE LIBERTARIAN PARTY OF NEW MEXICO

By _R. Lescombes_ Treasurer
Its

STATE OF _New Mexico_ )
COUNTY OF _San Juan_ )

Subscribed and sworn to before me this 28th day of June, 2017, by _Rebeca Lescombes_, _Treasurer_ of the Libertarian Party of New Mexico.

_Rhianna Yellowman_
Notary Public

My Commission Expires: _08/13/2017_

OFFICIAL SEAL
RHIANNA YELLOWMAN
NOTARY PUBLIC - STATE OF NEW MEXICO
[Seal]    My commission expires 08/13/2017