IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| LIBERTARIAN NAT'L COMMITTEE, INC., <br><br> Plaintiff, <br> v. <br><br> LIBERTARIAN PARTY OF NEW MEXICO, et. al. <br> Defendants. | NO.: 1:26-cv-01562-MIS-KK |

## **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, the Libertarian National Committee, Inc. ("LNC"), respectfully moves for a preliminary injunction under Federal Rule of Civil Procedure 65(a), preventing Defendants Libertarian Party of New Mexico, Chris Luchini, Laura Burrows, Paul McKenney, Frederick Snoy, and James Wernicke (collectively "Defendants") from continuing to unlawfully use the LNC's federally registered trademark LIBERTARIAN PARTY® (the "Mark"). Doc. 1-1. Defendants oppose this motion.

Defendants continue to willfully and maliciously infringe the Mark by misleading the public through using the Mark in connection with the solicitation of donations and the nomination of candidates and causing confusion amongst New Mexico's voters. Defendants have engaged in these actions while associating with a competing political party: the Liberal Party. Doc. 1-13, at 14. Plaintiffs have repeatedly requested that Defendants cease and desist—but they have refused. A preliminary injunction is necessary to stop the irreparable harm caused by the Defendants' ongoing actions. Swift intervention by this Court is necessary because of the rapidly approaching

nomination and election of federal and state candidates and to preserve public confidence in the electoral process.

## INTRODUCTION

**The Libertarian National Party**

Plaintiff, Libertarian National Committee, Inc., is the National Committee of the Libertarian Party as defined by 52 U.S.C. §30101(14). It manages the business of the Libertarian Party throughout the United States by functioning as a libertarian political entity separate and distinct from all other political parties or movements, electing Libertarians to public office to move public policy in a libertarian direction, chartering and promoting affiliate parties throughout the United States, fundraising for candidates, nominating candidates for President and Vice-President of the United States, supporting Libertarian Party and affiliate party candidates for political office, and engaging in public information activities. Doc. 1-6.

As part of its management of the party, Plaintiff has registered a number of trademarks with the United States Patent and Trademark Office ("USPTO") that are associated and identified with its national and local political activities. Plaintiff's trademarks include the federally registered trademark, LIBERTARIAN PARTY®, Reg. No. 2,423,459. Doc. 1-1. The Mark has been in use in commerce at least since January of 1972 and has been granted incontestable status by the USPTO through meeting the requirements of 15 U.S.C. §1065. The Mark is also famous under the requirements of 15 U.S.C. § 1125.

The LNC is authorized to charter affiliates throughout the United States. Doc. 1-6. Properly chartered affiliates receive a license to use the LNC's trademarks. In November 1972, the LNC chartered the Libertarian Party of New Mexico ("LPNM"). Declaration of C.A. Harlos, attached hereto as **Exhibit 1**. As a chartered affiliate of the Libertarian Party, LPNM received a license to

use the Mark. However, in August of 2022, LPNM notified the LNC that it was formally severing its affiliation with the LNC. Doc. 1-7. Then in September of 2022 the LNC formally disaffiliated with LPNM. Doc. 1-8. After LPNM became unaffiliated with the LNC, it lost its license to use the Mark. LPNM, however, continued to use the Mark despite repeated demands by Plaintiff to stop infringing. Doc. 1-21. LPNM continues to use the Mark today on its website and social media accounts. Declaration of D. Scott, attached hereto as **Exhibit 2**.

**The Defendants**

The Defendants conceded on their website that the LPNM was founded on June 27, 1972, six months after the predecessors in interest to the LNC first began using the mark, "Libertarian Party." The Libertarian Party of New Mexico was founded on June 27, 1972, with the purpose of being the New Mexico affiliate of the LNC's predecessor in interest. The state party held its first convention on July 22, 1972. LPNM History Website, retrieved May 29, 2026, attached hereto as **Exhibit 6**. This same webpage of Defendants claimed "The LPNM is the state affiliate of the Libertarian Party." Ex. 6. After this suit was filed, that portion of the LPNM's website returns a 404 error. Ex. 2, at F. This historical self-reporting comports with the records of the Secretary of State of New Mexico in the Party's historical archives. Secretary of State Certificate, retrieved May 29, 2026, attached hereto as **Exhibit 7**.

The Defendants have, without permission and without license, willfully infringed the Mark beginning in September of 2022. Defendants have used the Mark and confusingly similar marks in commerce and continue to hold themselves out to the public as "Libertarian Party of New Mexico." Doc. 1 at 13, 18, 19, Ex. 2. These actions have resulted in ballot confusion and donations intended for the LNC's affiliate being sent to the infringers and have harmed the LNC's ability to have candidates appear correctly on ballots. The Defendants have used the Mark to solicit funds

3

and to illegitimately suggest their activities and organization are affiliated with the Plaintiff without the Plaintiff's consent. On Defendants' website today, in addition to "Libertarian Party of New Mexico" appearing in the header and footer of every page, the LPNM Platform page states that "the party officially adopts the national Libertarian Party platform…" and on its County Affiliates page "The Libertarian Party is a grassroots political organization…" and the Become a Voting Member page states that to be a voting member of the LPNM, you must "Be registered as a Libertarian in NM" (i.e. registered with the Libertarian Party), while it's Our History page (very recently removed) states that "The LPNM is the state affiliate of the Libertarian Party." Ex. 2, at F. Meanwhile, Defendants' website has no mention of the Liberal Party whatsoever, in spite of the Libertarian Party of New Mexico being the recognized affiliate of the Liberal Party USA. Such actions continue to cause consumer confusion and the dilution of the Mark and the goodwill associated therewith. Ex. 2; Declaration of E. McMahon, attached hereto as **Exhibit 3**. Declaration of B. Konsavage, attached hereto as **Exhibit 4**.

Prior to filing this action, Plaintiff sent several cease-and-desist letters to Defendants. Doc. 1-20-23. But the Defendants have outright refused to respect Plaintiff's trademark rights and continue to cause irreparable harm through their infringement. This is a straightforward case about Defendants' willful and malicious use of an identical mark to mislead the public through false advertising and representations of affiliation with the Plaintiff. Defendants' actions of solicitation of political donations using the Mark, their use of the Mark in a corporate name and on their website, and their continued engagement in unfair competition with the LNC and its authorized affiliate for New Mexico are causing ongoing confusion amongst voters and members of the public. Egregiously, Defendants are preventing the rightful licensee of the LNC's trademark from

4

using that trademark in commerce for the LNC's benefit, due to the restrictions of New Mexico law. Doc 1, at 18.

Because of the on-going and irreparable harm caused by the Defendants' infringement, and given the rapidly approaching vitally important period for the nomination of national, federal and state candidates including raising campaign funds and generating national awareness, a preliminary injunction is necessary to preserve the integrity of the candidate and delegate nomination process and is in the vital public interest of preserving confidence in the electoral process.

## ARGUMENT

This is a straightforward case of trademark infringement and false designation. Plaintiff's mark is registered, incontestable, and famous. Defendants use the identical mark, for identical goods and services, with the intent of confusing the public and insinuating direct affiliation with the Plaintiff. It is undisputed that Defendants lack a license or any right to use the Mark and it is undisputed that Defendants continue to use the Mark despite repeated demands that they stop their infringement. A preliminary injunction is necessary to prevent the ongoing harm caused by the Defendants' willful infringement.

### I
### THE COURT SHOULD ENJOIN THE DEFENDANTS FROM CONTINUING TO CONFUSE VOTERS AND CONSUMERS BY THEIR USE OF PLAINTIFF'S MARK

In the Tenth Circuit, a movant seeking a preliminary injunction must establish that four factors weigh in its favor: "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070

(10th Cir. 2009); *see also Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). All four factors favor Plaintiff:

1.        Plaintiff has a strong likelihood of success on the merits because the Defendants are using an identical trademark to Plaintiff's Mark and are doing so for the same goods and services. This ongoing action by the Defendants has and is likely to continue to result in consumer confusion.

2.        Plaintiff will suffer irreparable harm because voters will be confused and lost, possibly forever; votes will be lost; fund-raising, vitally necessary for the party, has been and will continue to be misdirected, none of which will be recoverable; and voter trust and confidence, not only in the LNC but in politics in general, may be forever eroded.

3.        The injunction will cause no harm to Defendants by requiring them to stop deceiving the public about their affiliation with the LNC.

4.        The public interest will be served by an injunction that enforces truth and avoids confusion in political advertising. An injunction will confer a benefit by providing voters with greater knowledge by requiring Defendants to distinguish themselves from the Libertarian National Party instead of causing confusion amongst voters by holding themselves out as being licensed by and affiliated with the LNC when associating with a competing party.

These same factors were found to inure to the LNC's favor in a similar case in Michigan, *Libertarian Nat'l Comm., Inc. v. Saliba*, Case No. 5:23-cv-11074, United States District Court for the Eastern District of Michigan, in which a preliminary injunction was granted. The 6th Circuit upheld the preliminary injunction against use as a source identifier with a minor carve-out for a particular donation page. *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530 (6th Cir. 2024).

**A.**   **Plaintiff is Likely to Succeed on the Merits because Defendants'**
      **use of an Identical Mark in Commerce is Likely to Cause Consumer Confusion**

A defendant commits trademark infringement when it uses, in commerce and in a way likely to confuse consumers, an identical or similar mark to one owned by a plaintiff. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (The elements of trademark infringement are "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers.").

A plaintiff acquires a protectable interest in a trademark by "using a distinct mark in commerce." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053 (10th Cir. 2021). Although no registration is required for a plaintiff to acquire a protectable interest, here the LNC possesses a federal registration for the mark LIBERTARIAN PARTY® and that mark, because of its length of use, has become incontestable, as defined by Lanham Act. Section 32(b) of the Lanham Act 15 USC §1115(b) states that when a mark becomes incontestable "the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." As the Supreme Court has held, the "incontestable status may be used to enjoin infringement by others." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985).

After a protectable interest in a mark is established, the central inquiry is likelihood of confusion. *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832–33 (10th Cir. 2005) ("the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks."). Relevant confusion is not limited to confusion as to source but also includes confusion as to sponsorship or affiliation. *Id.* at 833–34. The Tenth Circuit uses six nonexclusive factors as

a "a guide for evaluating the likelihood of confusion: (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks." *Id.*

Each of these factors weigh strongly in Plaintiff's favor. Defendants use an *identical* mark in commerce for the same goods and services and in connection with promoting a competing political party. Ex. 2. The use of an identical mark by an infringer concurrently with its rightful owner strongly weighs in favor finding infringement because "there is great likelihood of confusion when an infringer uses the exact trademark." *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134 (3d Cir. 1981); *see also Opticians Ass'n of America v. Independent Opticians of Am*erica, 920 F.2d 187, 195–98 (3d Cir. 1990).

Defendants have, despite repeated warnings from Plaintiff and despite affiliating with a competing political party, continued to use the Mark when advertising to donors and on ballots. These actions can serve no other purpose than to deceive voters and donors about Defendants' relationship with the LNC and as a result to "derive benefit from the reputation or goodwill of plaintiff." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002) (noting that "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion" and that "one who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him."). The very reason the Defendants use the Mark is to take advantage of what LIBERTARIAN PARTY® means to the public and voters. There can be no question that

8

consumers would be confused by the Defendants' actions and that this confusion not only takes place when making a donation but also when casting a vote.

There is also significant evidence of actual confusion. The recognized New Mexico affiliate of the LNC has received numerous inquiries indicating actual confusion from voters, including voters confused as to which candidates on the ballot were affiliated with which parties, from prospective members, and from candidates, and has noted confusion and questions from various users on social media. Ex. 2. Declaration of B. Konsavage, attached hereto as Ex. 4.

The Defendants have the exact same use and manner of marketing the goods and services as Plaintiff and its authorized affiliates- using the mark prominently on its website, social media accounts, at local meetings and events, on fundraising and petitioning forms, on forms and communications soliciting and organizing volunteers and candidates, etc. Ex. 3. The recipients of the services are the general public, who exercise no special degree of care, and the Libertarian Party mark is strong due to its decades of extensive, continuous, nationwide use and its widespread renown. Ex. 3.

In addition, proof of continued unauthorized use of an original trademark by a party whose license to use the trademark has been terminated is sufficient to establish "likelihood of confusion." *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997); *see also U.S. Jaycees*, 639 F.2d 134, at 142–46; *Opticians Ass'n of America*, 920 F.2d 187, at 195–98. Where a defendant continues to hold themselves out as having some affiliation with a plaintiff—by continued use of a trademarked name after termination of the affiliation—they are using Plaintiff's Mark without permission and thereby creating a likelihood of confusion.

## B. Plaintiff has a Rebuttable Presumption of Irreparable Harm under the Lanham Act

Once a trademark owner has shown likelihood of success, the Lanham Act provides a rebuttable presumption of irreparable harm for preliminary injunctive relief. 15 U.S.C. § 1116(a). The Tenth Circuit has recognized that, after Congress amended § 1116(a), the Lanham Act expressly allows such a presumption when the owner of a trademark proves likelihood of success on the merits. *See Trial Lawyers College v. Gerry Spence Trial Lawyers College at Thunderhead Ranch*, 23 F.4th 1262, 1270-71 (10th Cir. 2022). Even without relying solely on the statutory presumption, injury to reputation and goodwill can support irreparable harm because courts may consider "the difficulty in calculating damages" and "intangible harms such as loss of goodwill or competitive market position." *Id.* at 1271 (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004)).

It is inevitable that Defendants' use of LIBERTARIAN PARTY® will cause confusion and cause voters, party members, potential members, and donors to be confused as to the association of Defendants with Plaintiff. This confusion is particularly harmful since the Defendants have chosen to affiliate with a competing political party and their political positions, political rhetoric and political platforms will be confused and attributed to Plaintiff to the significant and permanent detriment of Plaintiff.

If the Defendants are allowed to continue their infringement, voters, party members, potential members, and donors will be confused and lost, possibly forever. Votes will be lost, vitally necessary fund-raising will continue to be misdirected, and the voters' trust and confidence, not only in the LNC but in politics, will be eroded.

10

### C.    Defendants Will Suffer No Harm by Being Enjoined from Infringing Plaintiff's Mark

The third injunction factor asks whether Plaintiff's threatened injury outweighs any injury that Defendants would suffer under the injunction. *Fish*, 840 F.3d at 723; *Beltronics*, 562 F.3d at 1070. Here, Defendants will not suffer harm if they are enjoined from identifying themselves as something that they are not. Defendants are affiliates of the Liberal Party not of the Libertarian Party. Defendants can continue to present their opinions in the free and open market of ideas and be enjoined from confusing voters as to the origin and association of those opinions without causing harm to the Defendants. An injunction will cause no harm to the Defendants and instead will confer a benefit by providing voters with accurate information and a clear identification of political parties rather than allowing the Defendants to continue to sow confusion through the pretense of being licensed by and affiliated with the LNC.

### D.    The Public Interest is Served by Preventing Confusion Amongst Consumers and Voters About the Libertarian Party and its Affiliates

The final factor to evaluate in deciding a motion for preliminary injunction is whether the injunction would be adverse to the public interest. *Fish*, 840 F.3d at 723; *Beltronics*, 562 F.3d at 1070. In Lanham Act cases, the public interest is served by preventing confusion as to the source, sponsorship, affiliation, or approval of goods or services and by protecting the mark owner's goodwill. *See Beltronics*, 562 F.3d at 1071–72; *Team Tires Plus*, 394 F.3d at 833–34. In *Trial Lawyers College*, the Tenth Circuit upheld preliminary injunctive restrictions on a competing faction's confusing statements. 23 F.4th at 1272–74.

Persuasive authority similarly recognizes that the public interest supports enjoining splinter or former affiliated groups from using marks in a way that suggests authorization or affiliation. *See U.S. Jaycees*, 639 F.2d 134, at 142–46; *Opticians Ass'n of America*, 920 F.2d 187, at 195–98;

11

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, (2d Cir. 1986) ("The public interest is especially served by issuing a preliminary injunction against a former franchisee as a licensee's status increases the probability of consumer confusion."); *Republican National Committee v. Canegata et. al.*, No. 3:22-cv-0037 (V.I., St. Thomas and St. John Div.) ("When a 'splinter group [of the GOP] continue[s] to use' the trademarks that it no longer has permission to use, such a 'concurrent use of the … marks by both parties' constitutes infringement by the splinter group.") (Opinion granting PI attached hereto as **Exhibit 5**).

Because Defendants were previously affiliated with Plaintiff, and because they currently hold themselves out as associated with Plaintiff by their widespread use of the Plaintiff's Mark, there is a substantial likelihood of confusion amongst consumers, voters, party members, potential members, and donors. Plaintiffs seek an injunction that enforces the truth and stops the ongoing confusion created by the Defendants.

## II
## PLAINTIFF'S FAMOUS MARK
## ENTITLES THEM TO AN INJUNCTION AGAINST THE DEFENDANTS

In addition to trademark infringement, the Defendants' unauthorized use of the Mark is diluting and tarnishing Plaintiff's Mark. Under the Lanham Act, when a famous mark is used in commerce by an unauthorized party, the aggrieved party "shall be entitled to an injunction . . . regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C § 1125(c)(1). A famous mark is one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1115(c)(2)(A). The statute lays out a number of factors to consider when determining whether a mark is famous: (1) duration, extent, and geographic reach

12

of the mark; (2) amount value, and geographic extent of sales and services offered under the mark; and (3) the actual recognition of the Mark. *Id.*

The Libertarian Party, using the Mark, has run Presidential candidates for the past fifty-two years. It has actively run candidates for other offices in multiple elections at the national, state, and local level for that same amount of time. Ex. 3. The Libertarian Party is a household name and brand across the United States. The Mark identifies the source of the products, services, and political platform of the Libertarian Party both in the United States but also internationally.

"Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Harris Rsch., Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1166 (D. Utah 2007). Here, the Defendants have, while using an identical mark, associated with an entirely different political party: the Liberal Party. While the Defendants are free to associate with whatever political party or movement they desire, they are not free to do so while using LIBERTARIAN PARTY®. By using the Mark, they are harming Plaintiff's reputation by associating it with products and services that are not the ones of the Libertarian Party—and which negatively associate Libertarian Party with political positions that Plaintiff does not espouse. The Defendants' actions have and continue to result in "the lessening of the capacity of a famous mark to identify and distinguish goods or services." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 577 (D. Colo. 1997), *aff'd,* 185 F.3d 1084 (10th Cir. 1999).

## CONCLUSION

Plaintiff respectfully requests that the Court enter a preliminary injunction against the Defendants which (1) enjoins Defendants from using LIBERTARIAN PARTY®, (2) awards fees

for the cost and legal fees necessary for this motion, and (3) grants any and all other relief to which

Plaintiff may be entitled.

Date: May 29, 2026.

Respectfully Submitted,

BARDACKE ALLISON MILLER LLP

By:  /s/ *Billy Trabaudo*
Benjamin Allison
Justin Miller
Billy Trabaudo
141 E. Palace Avenue
Santa Fe, NM   87501
505-995-8000
ben@bardackeallison.com
justin@bardackeallison.com
billy@bardackeallison.com

FRESH IP PLC

By: /s/Cliff Hyra
Clifford D. Hyra (*pro hac vice*)
VA Bar No. 75,021
11710 Plaza America Drive
Suite 2000
Reston, VA 20190
(866) 913-3499
cliff@freship.com

*Counsel for Plaintiff Libertarian Nat'l
Committee*

14

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing document to be filed through the Court's CM/ECF system and to be served on all parties at their last known address through first class mail and a process server, by email through their Rule 4 agent Ms. Dern, and by filing with the Court Clerk under Rule 5(D) which caused which caused all parties to receive notice to be served.

**Paul McKenny**
12904 Mountain View Ave.,
Albuquerque, NM 88203

**Fredrick Snoy**
729 Adobe Rd NW,
Albuquerque, NM 87107

**Laura Burrows**
121 La Senda Rd
White Rock, NM 87547

**Libertarian Party of New Mexico**
Registered Agent: Chris Luchini
121 La Senda Rd
White Rock, NM 87547

**Chris Luchini**
121 La Senda Rd
White Rock, NM 87547

**James Wernicke**
3034 Nickle Street,
Los Alamos, NM 87544

**Alcia Dern, Esq.**
Rule 4 Agent
alicia@dernlaw.com

BARDACKE ALLISON MILLER LLP

By:     */s/ Billy Trabaudo*
Billy Trabaudo

15