## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LIBERTARIAN NAT'L | 
    COMMITTEE, INC., | 
 | 
    Plaintiff, | 
 v. | NO.: 1:26-cv-01562-MIS-KK
 | 
LIBERTARIAN PARTY OF | 
    NEW MEXICO, et. al. | 
    Defendants | 

## PLAINTIFF'S REPLY IN SUPPORT
## OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, the Libertarian National Committee, Inc. ("LNC"), respectfully submits this reply in support of its Motion for a Preliminary Injunction. Doc. 10.

### ARGUMENT

Defendants' response concedes they are continuing to use the mark LIBERTARIAN PARTY® (the Mark) in commerce and that their unauthorized use is confusing New Mexicans. As of today, their website continues to use the Mark. Faced with their undeniable acts of willful infringement, the response makes a hodgepodge of arguments, many of which are asserted without any legal authority or factual support.

### 1. Libertarian Party of New Mexico (LPNM) was a Licensee of the LNC

Defendants argue that a license must have existed for trademark infringement to have occurred—this is of course false. Trademark infringement occurs routinely without the infringer having first been a licensee, and indeed defendants' conduct would constitute trademark infringement even if it was not a former affiliate and licensee of plaintiff, as plaintiff's brief makes

plain. Regardless, LPNM *was* a licensee, which is supported by both its conduct, the documents attached to the Complaint, and the Motion for Preliminary Injunction. *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 824 (3d Cir. 2006) (holding that trademark licenses can be in writing or implied from the objective conduct of the parties.).

Defendants claim that the LNC's year one retrospective excludes New Mexico and that this is evidence that no license existed, but this statement is an inaccurate summary of the retrospective. Doc. 16, at 3. The year one retrospective lists four states that are "far ahead of the others" in recruitment and therefore "deserve special attention." Doc. 10-1, at 12. It lists California, New York, Texas, Illinois, and Alaska. *Id.* It then goes on to say there are "three states where we have no members at all–West Virgina, North Dakota, and South Dakota." *Id.* It is clear from this statement that there were members of the national Libertarian Party (controlled by the LNC) from New Mexico in 1971. More importantly, the same newsletter recounts recent LNC Executive National Committee votes which took place at a meeting in Albuquerque, NM. *Id.* at 13. At that Executive Committee meeting, New Mexico submitted a petition for affiliation with the LNC. While many of those original petitions were lost in a flood of the basement of the Watergate Hotel, some have survived.

Example petitions from other states demonstrate that the core function of the petition was to act as a license. The first sentence of the nominating petition is: "We understand that as an affiliate State Libertarian Party we will have the right to use the name Libertarian Party and the Party's symbol and slogan." Example Nominating Petitions, attached hereto as **Exhibit 1**. The petitions also contained quality controls over the use of that mark: "We hereby certify . . . we will not endorse or in any other manner support any candidates running in opposition to the National Libertarian Party's nominees . . ." and "that we have endorsed in open convention the national

2

Party's Statement of Principles and will take no stands that are inconsistent therewith." Ex. 1. A version of the Party's Statement of Principles was originally proposed by a New Mexican at the first National Convention in June of 1972.

New Mexico submitted a nominating petition to join the LNC. Doc. 10-1, at 13. That nominating petition included a license for the trademark at issue in this case. *See* Ex. 1. It then continued to affiliate with the LNC for over 50 years, using the Mark in commerce, participating in the LNC's conventions, and adhering to the LNC's bylaws. During those 50 years, LPNM never contested the seniority of the Mark or challenged LNC's rights to the Mark. This conduct strongly implies that LPNM understood itself to be a licensee of the Mark. After 50 years of acting as a licensee, the LPNM should not be heard now to claim that its subjective understanding was that it was never a licensee.

### 2. The LNC has Sufficient Quality Controls and Routinely Enforces its Rights against Infringers

Defendants assert that allowing affiliates to use the Mark dilutes LNC's trademark rights. The licensing of the mark by affiliates demonstrates that there is uniform agreement amongst other state affiliates that the LNC is the senior rights holder and that a license is necessary to use the Mark without committing infringement. The defendants' second argument raises two defenses: (1) lack of quality control and (2) lack of enforcement against potential infringers.

The defendants offer no evidence, other than a self-serving affidavit, that the LNC has failed to control the quality of affiliates using the mark. Defendant Lucini states that according to his personal knowledge "the LNC has never exercised any control over the nature or quality of LPNM's political activities. . . ." Doc. 16-1, at 3. But as a prior licensee, LPNM is estopped from asserting the defense of a naked license based on facts that occurred while it was a licensee. *Henry v. Pro 10 Originals, LLC*, 698 F. Supp. 2d 1279, 1284 (D. Wyo. 2010) ("The Tenth Circuit has

also held that a "naked license" defense may not raise facts showing lack of quality control that occurred during the term of the license. Rather, only facts showing lack of control that occurred after the term or period of the license are relevant to the defense.") (citing *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000)). The LNC has strong policies regarding trademark use and requires its affiliates to not endorse "candidates running in opposition to the National Libertarian Party's nominees for President and Vice President" and that they "will take no stands that are inconsistent" with the LNC's "Statement of Principles." Ex. 1.

Since the separation between LPNM and the LNC, plaintiff has made numerous attempts to assert its right to the Mark against LPNM including sending demand letters, attempting settlement negotiations, and eventually being forced to file this action. It has done the same with other infringers, including filing lawsuits to enforce its rights in other jurisdictions. Examples of Trademark Enforcement, attached hereto as **Exhibit 2.** The LNC has a strong record of enforcement and as this Court has recognized "[o]bviously, a trademark holder is not required to sue every possible infringer immediately upon hearing of a possible infringement . . ." and that "courts are divided on whether failure to sue others using the trademark name is sufficient to prove abandonment or even relevant to that determination." *Navajo Nation v. Urb. Outfitters, Inc.*, 212 F. Supp. 3d 1098, 1105 (D.N.M. 2016) (gathering cases).

### 3. The Mark is Not Generic and Defendants Have Failed to Rebut the Presumption of Validity Afforded by Registration

The defendants argue that the Mark is generic. In order to determine whether a mark is generic the Court must look at the goods or services the mark is associated with. This is because "[g]eneric marks are not capable of receiving protection because they identify the product, rather than the product's source." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). For example, using "donuts" as a standalone mark for the sale of donuts

4

would be generic. Here, the Mark, LIBERTARIAN PARTY®, is registered in Class 16 for newspapers, brochures, pamphlets, and booklets concerning political issues and in Class 42 for promoting the interests of a political party. Doc. 1-1. The Mark identifies the source of these newspapers and acts of promoting the interest of a political party as the LIBERTARIAN PARTY®—it does not identify the product of newspapers or the service of promoting a political platform.

In addition, the defendants offer no evidence that the Mark is generic. The United States Patent and Trademark Office (USPTO) will not register a mark that is generic, so "the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." *KMMentor, LLC v. Knowledge Mgmt. Pro. Soc., Inc.*, 712 F. Supp. 2d 1222, 1241 (D. Kan. 2010) (citing *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004)). The registration by the USPTO creates a presumption of validity "that requires the party challenging the trademark to produce sufficient evidence to rebut the presumption. This presumption of validity has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of the evidence." *Id.* The defendants have offered no evidence that "the primary significance of the mark is its indication of the nature or class of the product or service, rather than an indication of source" and that there is a "generic understanding of the mark from the viewpoint of the relevant public." *Id.*

### 4. **LPNM Has Failed to Offer any Evidence of Prior Use**

LPNM asserts that it has prior rights to the Mark but offers no evidence to support this point. To show prior use the LPNM would have to prove that it was using the mark in commerce prior to the LNC's use. *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053 (10th Cir. 2021)

(holding that to show superior rights to a mark through prior use the party must show "bona fide use of a mark in the ordinary course of trade, and not ... merely to reserve a right in a mark."). Defendants have made no such showing. To the contrary, the documents before the Court show that the LNC was using the Mark in commerce before LPNM. *Compare* doc. 10-7 (registering LPNM with the New Mexico Secretary of State) *with* doc. 10-1 at 10 (listing LNC Materials for sale).

5. **Evidence of Actual Confusion is Not Necessary to Prevail,**
   **and the LNC has Presented Evidence of Confused Consumers**

Defendants attack the evidence of confusion but fail to recognize that evidence of actual confusion is not necessary to prevail on the merits. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999) (noting that although evidence of actual confusion is the best evidence, a "plaintiff need not set forth evidence of actual confusion to prevail in a trademark infringement action."). Here, though, Plaintiff has put forth evidence of actual confusion where voters are confused as to who is the actual LNC affiliate. Doc. 10-2. Defendants also attack this evidence as inadmissible hearsay, but hearsay is routinely admitted at the preliminary injunction stage. "The Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (gathering cases) (Holding in a trademark infringement case that "[i]t is well established that a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. In keeping with this principle, many of our sister Circuits have recognized that affidavits and other hearsay materials are often received in preliminary injunction proceedings.").

## 6. Questions of Election Law are for the Secretary of State and the State Judiciary to Decide

To distract from their obvious infringement, the defendants attempt to recast this action as an act of election interference. The New Mexico Secretary of State (the Secretary) is the Chief Election Officer. She is not a party to this lawsuit, nor does plaintiff ask this Court to order the Secretary of State to take any action or for this Court to override any decision of the Secretary. This argument is a distraction. If plaintiff prevails, it will be for the Secretary and the state judiciary to decide questions of who can and cannot appear on a ballot. Similarly, if the defendants believe that some provision of the State or Federal Constitution allows them to violate the Lanham Act to appear on a ballot, they should make that argument to the Secretary and to the New Mexico judiciary.

## 7. Delaying the Injunction for Additional Discovery will Compound the Ongoing Harm

Counsel for the defendants submitted a declaration which fails to satisfy the good cause standard for expedited discovery. As an initial matter, the declaration identifies counsel as a potential fact witness and is an apparent attempt to further delay this proceeding in order to obtain discovery that has little to no bearing on the merits.

> "A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures. . . . Courts consider a number of factors to determine the reasonableness of the request for expedited discovery before a preliminary injunction hearing or to support a preliminary injunction motion, including (1) whether a preliminary injunction is pending; (2) how far in advance of the typical discovery process the request was made; (3) the purpose for requesting the expedited discovery; (4) the breadth of the discovery requests; and (5) the burden on the non-moving party to comply with the requests."

7

*Sirio v. Stancil*, No. 1:25-CV-02790-RMR-SBP, 2026 WL 184583, at *1 (D. Colo. Jan. 23, 2026).

The discovery requests information about other unrelated license agreements and enforcement actions by the plaintiffs. As noted above, licenses can be implied from conduct and a local affiliate's membership in the LNC is evidence of a license existing. But whether other affiliates possess a written license agreement is irrelevant to whether the LPNM has committed trademark infringement. As also noted above, how and in what way the LNC chooses to enforce its trademark rights is not dispositive of this matter. *See Urb. Outfitters, Inc.*, 212 F. Supp. 3d 1098, at 1105. In either event, the LNC has provided multiple examples of its enforcement activities, including succeeding at the Sixth Circuit in enforcing the same Mark. Defendants' requests serve only to further delay this process, a tactic they continue to employ, and to impose the unnecessary burden of expansive and largely irrelevant discovery on the plaintiffs. The Court should deny this request.

## CONCLUSION

Plaintiff respectfully requests that the Court enter a preliminary injunction against the defendants which (1) enjoins defendants from using LIBERTARIAN PARTY®, (2) awards fees for the cost and legal fees necessary for this motion, and (3) grants any and all other relief to which plaintiff may be entitled.

Date: June 10, 2026.

Respectfully Submitted,

BARDACKE ALLISON MILLER LLP

By: /s/ *Billy Trabaudo*
Benjamin Allison
Justin Miller
Billy Trabaudo
141 E. Palace Avenue
Santa Fe, NM  87501
505-995-8000

8

ben@bardackeallison.com
justin@bardackeallison.com
billy@bardackeallison.com


FRESH IP PLC

By: /s/Cliff Hyra
Clifford D. Hyra (*pro hac vice*)
VA Bar No. 75,021
11710 Plaza America Drive
Suite 2000
Reston, VA 20190
(866) 913-3499
cliff@freship.com

*Counsel for Plaintiff Libertarian Nat'l Committee*

9

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON MILLER LLP

By:    */s/ Billy Trabaudo*
        Billy Trabaudo