**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| LIBERTARIAN NAT'L COMMITTEE, INC., | |
| Plaintiff, | |
| v. | NO.: 1:26-cv-01562-MIS-JFR |
| LIBERTARIAN PARTY OF NEW MEXICO, et. al. Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS COUNT V UNDER RULES 12(b)(7) and 19**

Plaintiff Libertarian National Committee, Inc. (LNC), respectfully submits its opposition to Defendants' Motion to Dismiss Count V Under Rules 12(b)(7) and 19 for Failure to Join Required and Indispensable Parties, or, in the Alternative to Compel Joinder, and Memorandum in Support, doc. 28, and in the alternative, requests leave to amend the Complaint.

**INTRODUCTION**

Defendants argue, first, that LNC's claim for conversion requires joinder of additional parties. Second, defendants argue those additional parties cannot be joined because they are not subject to personal jurisdiction in New Mexico. Both arguments are incorrect.

First, defendants contend two nonparties must be joined as parties in this action: the donor's estate that made a bequest to Defendant Libertarian Party of New Mexico (LPNM) based on its then-affiliation with plaintiff LNC, and the escrow agent holding the corpus of the bequest. But LNC's claim is for conversion, and conversion is—and can be—alleged only against the existing defendants. Conversion is the exercise of dominion or control over property one does not own.

The Complaint alleges that conversion has occurred *as to funds LPNM already received* from the escrow agent by falsely holding itself out with the name LIBERTARIAN PARTY® after disaffiliation. Doc. 1, ¶ 84 ("Defendants have received annual distributions from the escrow funds in at least 2023, 2024, and 2025. Upon information and belief, the Defendants have spent, allocated, and otherwise unlawfully controlled these funds . . . ."). The Complaint does not allege the corpus of the escrow fund is under the wrongful control or dominion of LPNM. Nor does it allege the escrow agent or donor's estate are wrongfully controlling the corpus or have done anything at all wrong. When the escrow agent and the donor's estate are told the truth by defendants—that LPNM is no longer affiliated with the LNC and no longer has a right to use LNC's trademark LIBERTARIAN PARTY®—the estate and escrow agent can decide what they want to do with the corpus. The conversion claim does not ask the Court to determine what the donor's estate would want to do once it knows the truth about LPNM. That is for the donor's estate alone to determine.

The Complaint alleges only that the money LPNM already received through its wrongful use of the name LIBERTARIAN PARTY® has been converted by that continued wrongful use of the trademark. Doc. 1, ¶ 84. The party with sole and absolute dominion and control of that money is LPNM, and that party is before the Court. The Complaint nowhere alleges the escrow agent or the donor's estate have control over monies disbursed to LPNM—only that after disaffiliation, defendants' continued use of LIBERTARIAN PARTY® was false and deceptive, giving it dominion and control of additional funds through misuse of LNC's trademark.

Second, even if it *were* necessary to join the donor's representative and escrow agent, both are well within the Court's in personam jurisdiction. The donor's representative is a New Mexico citizen and resident of Los Alamos: David Marion Clinard, Jr., Personal Representative of the

Estate of Frank W. Clinard, Jr., whose estate was probated in Los Alamos County. The escrow agent is the Mercantile Bank of Michigan, a Michigan corporation—and the law is clear that when a foreign corporation contracts with New Mexicans to take money from one New Mexico person and disburse it over a period of years to another, those deliberate contacts support personal jurisdiction in New Mexico for claims arising from that contract. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277-78 (10th Cir. 2005) (holding that while a contract does not automatically establish sufficient minimum contacts, an interstate contract that creates continuing relationships and obligations with citizens of the forum state demonstrates the foreign party's purposeful availment). In addition, the escrow agent here specifically agreed to the provisions of New Mexico campaign finance law—which is what created the need for the escrow agent's business in New Mexico. Doc 1-24, at 1 (articulating contribution limits imposed by New Mexico campaign finance law and defining "State Contribution Limit"). This confirms purposeful availment of the benefits and protections of New Mexico law.

Finally, although defendant questions supplemental jurisdiction, the conversion claim clearly meets the standard for "arising from the same nucleus of operative fact," thereby invoking supplemental jurisdiction under 28 U.S.C. § 1367(a). The federal question in this case is trademark infringement, accomplished by defendants' falsely holding themselves out using the name LIBERTARIAN PARTY®. The conversion is based on the same fact: defendants continued to hold themselves out as LIBERTARIAN PARTY® to the escrow agent when they had disaffiliated from the LIBERTARIAN PARTY®. That false representation triggered continued payments which defendants exerted domination and control over, constituting conversion.

**ARGUMENT**

**I**

**NO ADDITIONAL PARTIES ARE NEEDED TO ADJUDICATE CONVERSION**

Fed. R. Civ. P. 19 sets out a two-step process (with multiple sub-steps) for evaluating defendants' dismissal argument. First, the Court must determine whether a nonparty is necessary to grant complete relief among the parties, and if so, must order that person to be joined as a party. Fed. R. Civ. P. 19(a)(1). Second, if it not feasible to join such a necessary party, the Court must engage in a multi-factor test to determine whether the action should proceed among the existing parties or be dismissed. Fed. R. Civ. P. 19(b). Here, the analysis ends at the first step because no additional parties are needed for complete adjudication of the conversion claim against defendants. *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1142 (N.D. Okla. 2001) ("In this case, no inquiry under Rule 19(b) is necessary because the threshold requirements of Rule 19(a) have not been satisfied.")

Under the first step set out in Fed. R. Civ. P. 19(a)(1)(A), a person is necessary to the action only when, in that person's absence, the court cannot provide relief among the existing parties. Separately, Fed. R. Civ. P. 19 (a)(1)(B) provides that a non-party is "required" if "that person claims an interest relating to the subject of the action," that meets certain requirements. *See Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kansas*, 158 F. Supp. 3d 1183, 1206 (D.N.M. 2015). The Rule requires that the absent party actively claim the interest. *See Rhone–Poulenc, Inc. v. Int'l Ins. Co.*, No. 94–C–3303, 1996 WL 435180, *7–8 (N.D. Ill. July 31, 1996). Also, a party asserting an interest under Fed. R. Civ. P. 19(a)(1)(B) must claim that without their presence, their interest could not be protected or an existing party would be subject to inconsistent obligations. Fed. R. Civ. P. 19 (a)(1)(B)(i)-(ii). Rule 19(a)(1)(b) does not apply because no absent party is claiming an interest.

Defendants argue the conversion claim requires the Court determine who should ultimately receive the remaining funds in the bequest corpus, given defendants' disaffiliation from LNC. Such an adjudication would certainly require participation of both the escrow agent and donor's estate. *See* Doc. 28, at 4-5.

But Count V does reach so far. Under New Mexico law, conversion is "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Nosker v. Trinity Land Co.*, 1988-NMCA-035, ¶ 15, 107 N.M. 333. Count V does not purport to ask the Court to determine what the donor's estate and the escrow agent would decide to do with the remainder of the bequest if they were told the truth—that defendants are no longer affiliated with the LIBERTARIAN PARTY®. The conversion claim reaches only the funds defendants already received due to their false and misleading use of LNC's trademark after disaffiliation. The Complaint alleges not that the escrow agent or donor's estate committed any wrong, but that defendants did by falsely claiming continued affiliation with LNC. "Defendants have received annual distributions from the escrow funds in at least 2023, 2024, and 2025. Upon information and belief, the Defendants have spent, allocated, and otherwise unlawfully controlled these funds meant for the LNC to designate to its recognized affiliate." Doc. 1, ¶ 84.[1]

The unlawful exercise of dominion over funds has been committed only by defendants, not

---

[1] Paragraph 83 of the Complaint also alleges, "Upon LPNM decision to unaffiliate with the LNC the bequest should have been transferred to the LNC for distribution to its recognized local affiliate, but Defendants failed to do so." Doc. 1, ¶ 83. While this can be read to allege that distributed amounts from the bequest actually received by LPNM should have been transferred to LNC, if the Court reads this paragraph to allege that the corpus should be transferred, Plaintiffs request leave to amend the Complaint under Fed. R. Civ. P. 15(a)(2) to clarify that the claim is limited to funds that have been distributed.

by the escrow agent or donor. The claim for conversion asserts that defendants' misuse of LIBERTARIAN PARTY caused defendants to receive and control funds under false pretenses, resulting in conversion. Because the conversion claim does not seek adjudication of the remaining corpus of the bequest, the escrow agent and the donor's estate are not necessary under Fed. R. Civ. P. 19(a)(1)(A).

**II**
**THE DONOR'S REPRESENTATIVE AND ESCROW AGENT**
**ARE AVAILABLE TO BE JOINED AS PARTIES IF THEY WERE NEEDED**

Even if they needed to be joined, the Court has personal jurisdiction over both the donor's estate and escrow agent. The donor's representative is a New Mexico citizen residing in Los Alamos County. The escrow agent, although a Michigan bank, voluntarily reached out to New Mexico and signed a long-term contract with two New Mexico parties—the donor's representative and the then-New Mexico affiliate of the LNC. The escrow agent agreed to take funds from one New Mexico person and pay them to another New Mexico corporation over many years. Under the law of specific personal jurisdiction, the Michigan bank purposefully directed its activities towards New Mexico and has agreed to make continuous, yearly payments on behalf of the Estate to the affiliate. Applying the "continuing relationship" framework used by courts in determining cases involving contacts, this Court can exercise specific personal jurisdiction over the Michigan escrow agent.

General personal jurisdiction allows a court to exercise jurisdiction over defendants where their affiliations are so "continuous and systematic" that they are at home in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction arises when defendant has taken some act by which it "purposefully avails itself of the

6

privilege of conducting activities within the forum State" and thereby subjects itself to jurisdiction over matters relating to such contacts. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Specific personal jurisdiction is proper when the defendant has purposefully established minimum contacts within the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). One establishes sufficient minimum contacts through "purposeful availment." *Ford Motor Co.*, 592 U.S. 351, 359 (2021). Purposeful availment, or purposeful direction, requires that a defendant have "deliberately…engaged in significant activities within" the forum State or deliberately directed its activities at the forum State, so that it has "manifestly availed [itself] of the privilege of conducting business there." *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308 (10th Cir. 2024) (internal citations omitted). For interstate contracts, purposeful direction is determined by the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1978). A single contract can demonstrate a defendant's continuing relationships with citizens of the forum state when the terms and circumstances of the agreement establish ongoing activities directed towards the forum State. *See, e.g.*, *R&M Gov't Servs., Inc. v. Kaman Aerospace Corp.*, No. CV 2:24-524 GJF/JHR, 2024 WL 4203345, at *10-11 (D.N.M. Sept. 16, 2024) (holding that a contract established the defendant had purposefully directed its activities towards New Mexico because it was aware of the location of the business with which it contracted, it specifically aimed to collaborate with the New Mexico based partner, and it engaged in years of communication with that partner); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277-78 (10th Cir. 2005) (affirming exercise of personal jurisdiction over a French company where the contract for services required a continuing relationship between the parties). Under this framework, the Court should consider "the out-of-state defendant's 'continuing relationships and obligations with citizens of the forum state.'" *Old*

*Republic Ins. Co. v. Continental Motors, Inc*., 877 F.3d 895, 905 (10th Cir. 2017). Contemplated future consequences of entering into the agreement, along with the terms of the contract and the parties' course of dealing, must also be evaluated in determining whether the defendants purposefully established minimum contacts with the forum. *Burger King Corp.*, 471 U.S. at 479.

Here, the escrow agreement establishes a long-term relationship between the escrow agent and its two New Mexico contracting parties: the donor's estate and the former New Mexico affiliate of the LNC, (Escrow Agreement, doc. 1-24, at 7), committing to pay $5,500 of the New Mexico bequest to LPNM each year for many years to come. *Id.* at 1. The agreement requires the escrow agent to continually engage with the former New Mexico affiliate to distribute these funds. The actions of the escrow agent are directed at the New Mexico recipient. As in *R&M Gov't Servs., Inc.*, the escrow agent here is aware that its series of payment transactions involves a New Mexico political party, as this is spelled out in the Escrow Agreement. Doc. 1-24, at 1; *R&M Gov't Servs., Inc.*, 2024 WL 4203345, at *11 (emphasizing defendant's awareness of its collaboration with a New Mexico partner, with whom it engaged in years of communication).

As a result of this continuing relationship, the escrow agent has established minimum contacts in New Mexico and availed itself of the benefits and protections of our state's laws. In addition, the escrow agent subjected itself to the campaign finance laws of New Mexico. *See* Escrow Agreement, doc. 1-24, at 1 ("[C]ontributions by the Estate to the LPNM are currently limited under applicable state campaign finance law to the sum of not more than [$5,500.00] . . . ."). The Campaign Reporting Act, NMSA 1-19-25 to 1-19-36 NMSA 1978, contains contribution limits to and from candidates and political committees. By acknowledging and setting out the limits of New Mexico campaign finance laws, the escrow agent agreed to adhere to New Mexico law and to distribute the escrow funds subject to New Mexico law. *See* Escrow Agreement, doc.

1-24, at 1. An out-of-state entity which voluntarily contracts with two New Mexico entities for a long-term payment plan, and subjects itself to the laws of New Mexico, is subject to specific personal jurisdiction for claims arising from that contract. *See Pro Axess, Inc.*, 428 F.3d at 1277-78 (affirming exercise of personal jurisdiction over a French company where the contract for services required a continuing relationship between the parties).

**III**
**CONVERSION ARISES FROM THE SAME**
**FACTUAL NUCLEUS AS TRADEMARK INFRINGEMENT,**
<u>**PROVIDING SUPPLEMENTAL JURISDICTION OVER CONVERSION**</u>

The Motion argues there is no basis for federal subject-matter jurisdiction over the conversion claim, based on the assertion that the conversion claim does not share a common nucleus of operative fact with the Lanham Act claims. Doc. 28, at 7. While the Motion correctly sets out the test for supplemental jurisdiction—when a state law claim is part of the same case or controversy as a federal question claim—defendants are incorrect that the standard is not met.

The Court's subject matter jurisdiction arises under 28 U.S.C. § 1331, based on federal Lanham Act claims. The Court may exercise supplemental jurisdiction over the conversion claim if it is part of the same case or controversy. 28 U.S.C. § 1367(a); *see also Williams v. Bd. of Regents of Univ. of New Mexico*, 990 F. Supp. 2d 1121, 1148 (D.N.M. 2014) (holding that even additional claims that do not arise out of identical facts nonetheless form part of the same case or controversy because it is all events together that led to the plaintiffs' injuries and damages). State and federal claims form part of the same case or controversy and trigger supplemental jurisdiction when they derive from a common nucleus of operative fact. *See City of Chicago v. International College of Surgeons,* 522 U.S. 156, 157, 166 (1997) (concluding that the purpose of supplemental jurisdiction is to allow the district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking).

9

Here, LNC's conversion claim is premised on the same facts as infringement: after disaffiliation, defendants falsely and deceptively held themselves out to the world as being affiliated with the LIBERTARIAN PARTY®, including to the escrow agent and donor's representative. This infringing conduct triggered continued release of funds from the escrow agent to defendants, causing state-law conversion in addition to federal-law infringement. Doc. 1, ¶¶ 80–84. When conversion results from engaging in intentional trademark infringement to gain an unjust benefit, the act is a derivative of the trademark infringement. *See FFWCT, LLC v. USA Football, Inc.*, No. 4:23-CV-465, 2025 WL 28006, at *6 (E.D. Tex. Jan. 3, 2025) (exercising supplemental jurisdiction over USA football's conversion claim because by exerting unauthorized control over the holders' mark, the defendant intended to deprive them of their benefit).

Finally, if the court determines that the Complaint embraces broader claims than articulated in this response, the need for additional parties or dismissal can be cured by amendment, and LNC respectfully requests leave to amend the Complaint to clarify that it seeks adjudication only of the money defendants have actually received based on continued use of LIBERTARIAN PARTY®. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of the Rule [15] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.").

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, Plaintiff LNC respectfully requests that defendants' Motion be denied.

Date: July 8, 2026.

Respectfully Submitted,

BARDACKE ALLISON MILLER LLP

10

By: /s/ Benjamin Allison
Benjamin Allison
Justin Miller
Billy Trabaudo
141 E. Palace Avenue
Santa Fe, NM  87501
505-995-8000
ben@bardackeallison.com
justin@bardackeallison.com
billy@bardackeallison.com

FRESH IP PLC

By: /s/ Cliff Hyra
Clifford D. Hyra (*pro hac vice*)
VA Bar No. 75,021
11710 Plaza America Drive
Suite 2000
Reston, VA 20190
(866) 913-3499
cliff@freship.com


*Counsel for Plaintiff Libertarian Nat'l
Committee*

11

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON MILLER LLP

By: */s/ Billy Trabaudo*
Billy Trabaudo

12