**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LIBERTARIAN NATIONAL COMMITTEE, INC.,

Plaintiff,

v. Civ. No. 1:26-cv-01562-MIS-JFR

LIBERTARIAN PARTY OF NEW MEXICO; CHRIS LUCHINI; LAURA BURROWS; PAUL MCKENNEY; FREDERICK SNOY; and JAMES WERNICKE,

Defendants.

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS COUNT V UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(7) AND 19 FOR FAILURE TO JOIN REQUIRED AND INDISPENSABLE PARITES, OR IN THE ALTERNATIVE TO COMPEL JOINDER**

THIS MATTER is before the Court on Defendants Libertarian Party of New Mexico ("LPNM"), Laura Burrows, Chris Luchini, Paul McKenney, Frederick Snoy, and James Wernicke's ("Defendants") Motion to Dismiss Count V under Federal Rules of Civil Procedure 12(b)(7) and 19 for Failure to Join Required and Indispensable Parties, or in the Alternative to Compel Joinder ("Motion"), ECF No. 28, filed June 24, 2026. Plaintiff Libertarian National Committee ("LNC" or "Plaintiff") filed a Response on July 8, 2026. ECF No. 40. Defendants did not file a reply. Upon review of the Parties' submissions, the record, and the relevant law, the Court will DENY the Defendants' Motion WITHOUT PREJUDICE.

## I. Background

Plaintiff alleges trademark infringement by Defendants. Compl. at 1, ECF No. 1. Defendant LPNM began affiliating with Plaintiff in 1972, the year both Plaintiff and Defendant LPNM were founded. Mot. at 2–3, ECF No. 10. In 2001, Plaintiff trademarked the term LIBERTARIAN

PARTY ® ("Mark"), Reg. No. 2,423,459, with the United States Patent and Trademark Office. *Id.* at 2. As part of the registration, Plaintiff's use was recognized as starting on January 1, 1972. Trademark Registration at 1–2, ECF No. 1-1.

In August 2022, Defendant LPNM "notified the LNC that it was formally severing its affiliation with the LNC." Mot. at 3, ECF No. 10. In September 2022, Plaintiff LNC "formally disaffiliated with LPNM." *Id.* Defendant LPNM continued to call itself the Libertarian Party of New Mexico, including using the title on their party website, when soliciting political donations, when endorsing candidates and engaging with voters, with the state of New Mexico for elections, and otherwise as one would expect by a political party. *Id.* at 3–5.

Plaintiff sent at least four cease-and-desist letters starting in July 2023, with the most recent letter sent in May 2026. Compl. ¶ 25, ECF No. 1. On May 15, 2026, Plaintiff filed the instant suit, seeking to stop Defendants from continuing to hold themselves out as the Libertarian Party of New Mexico in alleged violation of Plaintiff's Mark, and for converting funds received due to its use of the Mark. Compl., ECF No. 1. Plaintiff asserts that Defendants' "infringement has caused harm and damage to the LNC and its official affiliate, including monetary harm, political harm, and reputational harm; dilution and disparagement of the LNC's federally registered Trademark and the goodwill associated therewith." *Id.* ¶ 26.

On June 17, 2026, the Court issued a Preliminary Injunction enjoining Defendants from using "the LNC's federally registered trademark LIBERTARIAN PARTY®." ECF No. 25 at 21.

On June 24, 2026, Defendants filed this Motion arguing that the Court should dismiss Count V for failure to join indispensable parties, or, in the alternative, require joinder of required and indispensable parties. Count V alleges that Defendants have received annual disbursements from an escrow account established by a bequest left to LPNM by Frank W. Clinard Jr. in 2016

("the Escrow Account"). Compl. ¶ 81, ECF No. 1; ECF No. 1-24. The Escrow Account's disbursements are managed by an escrow agent, Mercantile Bank of Michigan ("Escrow Agent"), by the terms of a contract between the Escrow Agent, the Estate of Mr. Clinard Jr. ("the Estate"), and LPNM ("Escrow Agreement"). ECF No. 1-24. Furthermore, Plaintiff alleges that after disaffiliation Defendants wrongfully continued to receive, spend, allocate, or otherwise unlawfully control annual disbursements. Compl. ¶¶ 83–84. In support of this allegation, Plaintiff further alleges that: (1) the Escrow Agreement set up disbursements to Defendants as a result of their affiliation with Plaintiff, and (2) that upon disaffiliation with Plaintiff, the Escrow Agreement implied that Plaintiff's New Mexico affiliate was entitled to disbursements, rather than Defendant. *Id.* ¶¶ 82–83.

## II. Legal Standard and Background

### A. Federal Rule of Civil Procedure 19 Joinder and Rule 12(b)(7) Dismissal

Defendants argue for dismissal under Rule 12(b)(7), for "failure to join a party under Rule 19," and, in the alternative, for joinder under Rule 19. "The proponent of a motion to dismiss under Rule 12(b)(7) has the burden" of proving that a party is required. *Picuris Pueblo v. Oglebay Norton Co.*, 228 F.R.D. 665, 666 (D.N.M. 2005). In arguing a motion to dismiss based on failure to join a required party, parties may, like here, rely solely on the pleadings. *Id.*

By applying Rule 19, courts resolve "[t]he question of whether an absent party is [required][1] and/or indispensable[.]" *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir.), *opinion modified on reh'g*, 257 F.3d 1158 (10th Cir. 2001) (citation omitted). "Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to

[1] The 2007 Amendments to Federal Rule of Civil Procedure 19 replaced the world "necessary" with the word "required" in subparagraph (a). The Court will utilize the term "required" even when the term "necessary" is referenced in case law from before the Amendments. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855 (2008).

join a purportedly indispensable party." *Id.* (citation omitted). "First, the court must determine whether the absent person is" required under Rule 19(a). *Id.* (citations omitted). Second, "[i]f the absent person is [required], the court must then determine whether joinder is 'feasible.'" *Id.* (citing Fed. R. Civ. P. 19(a)–(b)). If so, the court must order joinder. Finally, "if joinder is not feasible, the court must decide whether the absent person is 'indispensable,' i.e., whether in 'equity and good conscience' the action can continue in his absence" by considering the four factors in Rule 19(b). *Id.* If, after analyzing the Rule 19(b) factors, the court finds that the action or claim should not proceed among the existing parties, the court may dismiss the action or claim.

The Rule 19 analysis is not formalistic, instead it requires the court to make "a pragmatic decision based on practical considerations in the context of particular litigation." *Picuris Pueblo*, 228 F.R.D. at 666.

**B. Conversion**

The disputed Count V is based on a state law tort claim of conversion. In New Mexico, conversion, a common law tort, "is defined as the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Nosker v. Trinity Land Co.*, 757 P.2d 803, 807–08 (N.M. Ct. App. 1988). The specific elements of the tort differ depending on the type of conversion pled.[2] *Sugar v. Tackett*, 632 F. Supp. 3d 1218, 1232–33 (D.N.M. 2022) (explaining that the Restatement (Second) of Torts § 223 (1965) contains not one, but seven types of conversion claims).

---

[2] The demand and refusal conversion tort in *Nosker* has three elements, including: "(1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to plaintiff; and (3) that the defendant refused to return the property to plaintiff." *Id.* at 808 (citing Restatement (Second) of Torts § 237 (1965)).

Regardless of which type of conversion Plaintiff is in fact alleging, however, "[i]n order to recover damages for conversion, a plaintiff must have a right to immediate possession of property," often "based on some form of ownership interest." *Nosker*, 757 P.2d at 808. (citations omitted). In New Mexico, where the converted property has not been returned to the owner, courts award damages of "the value of the property at the time of conversion with interest." *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262 (N.M. Ct. App. 2012) (quoting *Valley Chevrolet Co. v. Whitaker*, 416 P.2d 154, 155 (N.M. 1966)).

**III. Discussion**

The Court finds that Defendants have not yet established that the parties it moves to join are required parties to this case. Even though adjudication of the conversion claim will require the Court to determine which parties have ownership interests in the funds disbursed from the Escrow Account, Defendants have not yet provided sufficient evidence and argument that the Court will be unable to accord the requested relief in the absence of additional parties.

Defendants argue that, since the funds are held by a third party and distributed to LPNM, (1) the Escrow Agent is a required party under Rule 19(a)(1)(A), Mot. at 4, (2) the Escrow Agent is a required party under Rule 19(a)(1)(B), *id.* at 4–5, (3) the donor's Estate or Successor in Interest is a required party under Rule 19(a)(1)(B), *id.* at 5–6, and (4) the Escrow Agent is a required party because Count V is a stakeholder dispute between two claimants over money held by a neutral stakeholder, *id.* at 6. Defendants further argue that Count V must be dismissed because: (1) the Court lacks personal jurisdiction over the Escrow Agent, who therefore cannot be joined, and the subsequent Rule 19(b) analysis weighs in favor of dismissal; and (2) the Court lacks supplemental

jurisdiction over Count V.[3] *Id.* at 6–8. In the alternative, Defendants request the Court order Plaintiff to join the Escrow Agent and the Estate, among other successors in interest. *Id.* at 8.

Plaintiff responds that no additional parties are required because Count V, conversion, does not require the Court to order the Escrow Agent or Estate to act, but rather alleges that Defendants received and used funds in 2023, 2024, and 2025 under false pretenses. Resp. at 5–6, ECF No. 40. Plaintiff also argues that the Court has personal jurisdiction over both the Escrow Agent and the donor's Estate because the former has sufficient contacts with New Mexico and the latter's representative is a New Mexico citizen. *Id.* at 6–9. In the alternative, Plaintiff requests leave to amend the Complaint to "clarify that it seeks adjudication only of the money defendants have actually received based on continued use of" the trademark. *Id.* at 10.

**A. Rule 19 Does Not Require Joinder in These Circumstances**

The Rule 19 analysis begins with a determination of whether the absent party is "required" as described in Rule 19(a). *See Norton*, 248 F.3d at 997. A party is "required" if:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Pro. 19(a)(1)(A)–(B).

Because both elements of subsection (B) require the absent party actively claim an interest, it is not sufficient for the party moving for joinder to claim an interest on behalf of the absent party.

[3] The Court resolved this argument in its Order Denying Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6). ECF No. 54.

*See Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kan.*, 158 F. Supp. 3d 1183, 1206 (D.N.M. 2015) (citing cases).

***(1) Defendants have not yet proven that the Escrow Agent and the Estate are required parties under the Rule 19(a)(1)(A) analysis.***

The Court must be able to adjudicate all elements of the conversion claim in order to accord complete relief. The common element among recognized conversion claims—that the plaintiff had the right of possession to the personal property at issue—is most relevant here. The Court finds that Plaintiff's Complaint only concerns the funds already disbursed to LPNM from the Escrow Account, as articulated by Plaintiff. Resp. at 10.[4] Accordingly, to adjudicate this issue and accord complete relief, the Court must determine whether Plaintiff proved that it had, at the time of the post-disaffiliation disbursements, a right of possession to the trust disbursements based on some sort of ownership interest. *See Nosker*, 757 P.2d at 808.

Plaintiff alleges two facts in the Complaint that seek to establish an ownership interest in the funds already disbursed to LPNM from the Escrow Account. First, that "The Escrow Agreement is based on the representation that LPNM is 'officially recognized by the Federal Election Committee as a state committee of the Libertarian National Party.'" Compl. ¶ 82, ECF No. 1 at 14. And second that "Upon LPNM['s] decision to unaffiliate with the LNC[,] the bequest should have been transferred to the LNC for distribution to its recognized local affiliate." *Id.* ¶ 83. In explicitly pointing to the Escrow Agreement, with no other stated basis for an ownership interest, Plaintiff has only pled an ownership interest rooted in the text and intent of the Escrow Agreement, or, alternatively, the bequest itself. Accordingly, the Court must interpret the Escrow

[4] This is further clarified by Plaintiff's prayer for relief of "A judgment in favor of Plaintiff that Defendants converted funds rightfully belonging to Plaintiff's recognized affiliation," which reaches only to funds already converted. Compl. at 15.

Agreement, and potentially the instrument that created the bequest, to determine whether Plaintiff has an ownership interest in the funds disbursed under that Escrow Agreement to accord any relief for conversion.

Although Plaintiff has not argued that there is a method to determine whether it has an ownership interest in the funds disbursed to LPNM other than the Court interpreting the relevant instruments, Defendants have similarly not provided evidence or argument that the parties with interests in the Court's interpretation of the Escrow Agreement and the bequest must be joined as parties, rather than called as witnesses. As witnesses, both the Estate and the Escrow Agent would have opportunity to aid in the Court's interpretation of the documents relevant to Plaintiff's claimed interests in the disbursed funds as necessary. To find the identified non-parties required, the Court would need additional evidence and argument about the particular interests of the non-parties in the Court's interpretation of the instruments relevant to establishing an ownership interest in funds disbursed from the Escrow Account.

At this time, therefore, the Court finds that neither the Estate nor the Escrow Agent are required parties to the case under Rule 19 because of the analysis the Court will undertake in adjudicating the conversion claim. However, the Court may reconsider joinder under Rule 19(a)(1)(A) in the event that Defendants, or the relevant parties themselves, come forward with evidence and argument that the Court cannot interpret the four corners of the Escrow Agreement, and the bequest if necessary, without their full participation in the case as parties.[5]

[5] Plaintiff concedes that an adjudication involving which party should receive the remaining corpus of the Escrow Account "would certainly require participation of both the escrow agent and the donor's estate." Resp. at 5. If Defendants, or other parties, were to present evidence and argument that this adjudication will also determine which parties should receive the remaining corpus in the Escrow Account, or a similar question, the Court may take these under consideration in a subsequent motion.

The Court further finds that it will be able to order the means for relief (i.e. ordering one existing party to return the funds to the Escrow Agent or ordering one existing party to transfer the funds to the other party) without joining additional parties. No additional parties, including the Escrow Agent, the Estate, or other successors in interest of the Estate, will need to act in order to accord complete relief with respect to the already disbursed funds from the Escrow Account—the only funds at issue in the Complaint as pled. Thus, the Court can accord complete relief between the existing parties.

***(2) No absent party has yet claimed an interest in the litigation as required by Rule 19(a)(1)(B).***

By its own terms, and consistent with the interpretation of the District of New Mexico, joinder under Rule 19(a)(1)(B) requires absent parties to claim an interest as a threshold issue in determining whether they are required parties. *See Hartford Cas. Ins. Co.* 158 F. Supp. 3d at 1206.

Here however, Defendants have not alleged that any of the parties they represent as "required" have in fact claimed an interest in this case. Instead, Defendants themselves claim interests on behalf of absent parties. Accordingly, no party yet has met the standard for joinder as a required party under Rule 19(a)(1)(B).

Because the Court finds that no additional parties are required at this time, the Court will forgo the feasibility and indispensability analyses.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Count V under Federal Rules of Civil Procedures 12(b)(7) and 19 for Failure to Join

Required and Indispensable Parties, or in the Alternative to Compel Joinder, ECF No. 28, is **DENIED WITHOUT PREJUDICE**.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE